507 Pa. 344 (1985)
490 A.2d 394
COMMONWEALTH of Pennsylvania, Appellant,
v.
John ZOLLER, Appellee.
COMMONWEALTH of Pennsylvania, Appellant,
v.
Despina SMALIS, a/k/a Pepe Smalis, Appellee.
COMMONWEALTH of Pennsylvania, Appellant,
v.
Ernest SMALIS, a/k/a Anastasios Smalis, Appellee.
Supreme Court of Pennsylvania.
Argued September 10, 1984.
Filed March 29, 1985.
Reargument Denied June 11, 1985
*347 Edward Tocci, Dist. Atty., John Lee Brown, Anthony Berosh, Dale M. Fouse, Theresa Ferris-Dukovich, Asst. Dist. Attys., Beaver, for appellant in No. 26.
Robert E. Colville, Dist. Atty., Robert L. Eberhard, Deputy Dist. Atty., Melinda G. Tell, Asst. Dist. Atty., Pittsburgh, for appellant in No. 62.
Bernard Rabik, Beaver, for appellee in No. 26.
Thomas A. Livingston, Pittsburgh, for Ernest Smalis, etc.
Norma Chase, Pittsburgh, for Despina Smalis, etc.
*348 Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION
NIX, Chief Justice.
We are here called upon to consider the broad question as to the applicability of the Double Jeopardy Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment,[1] upon a trial court order granting a defendant's motion to terminate the trial in his favor before verdict. Specifically, the issue raised is whether our procedure which permits a trial court's order sustaining a demurrer to the Commonwealth's evidence to be reversed upon appeal, allows a new trial where the order was erroneously entered. For the reasons that follow we are satisfied that our procedure does not offend double jeopardy.

I.
This appeal concerns two consolidated cases, Commonwealth v. Smalis, 331 Pa.Super. 307, 480 A.2d 1046 (1984), and Commonwealth v. Zoller, 318 Pa.Super. 402, 465 A.2d 16 (1983), both of which ended when the trial judge, sitting in a non-jury trial, granted defendants' demurrers to the prosecution's case. In Smalis defendants were charged with two counts of murder by arson. After the prosecution presented its evidence, the trial court found as a matter of law that there was insufficient evidence to link the defendants to the setting of the fire and sustained defense demurrers. The Commonwealth appealed. A panel of the Superior *349 Court analogized the demurrer to an acquittal, and quashed the appeal on double jeopardy grounds. On reargument, en banc, the Superior Court affirmed the panel's decision.
Similarly, in Commonwealth v. Zoller, supra, the trial court determined that the evidence did not establish the element of general criminal intent and sustained defense demurrers to charges of aggravated assault, simple assault, recklessly endangering another person and criminal conspiracy. On appeal, the Superior Court found that the trial court erred when it sustained the motions for demurrer, but concluded that it was unable to grant the Commonwealth any relief in light of its earlier ruling in Commonwealth v. Smalis, supra.

II.
Double jeopardy has been recognized as having three separate and distinct objectives: the protection of the integrity of a final judgment, the prohibition against multiple prosecutions even where no final determination of guilt has been made and the proscription against multiple punishment for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The question of multiple punishments for the same offense is not implicated in the instant appeals and therefore need not require our attention. We are called upon to examine the first two objectives to determine whether they are in any way offended by a redetermination of the trial courts' decisions to grant the motion for demurrer.

A.
The notion of the sanctity of the finality of a judgment in a criminal case developed from the common-law pleas of autrefois acquit, autrefois convict, and pardon which required a final judgment of guilt or innocence by the finder of fact. The most frequent articulation of this theory has been ". . . that the State with all of its resources and power should not be allowed to make repeated attempts to convict *350 an individual for an alleged offense. . . ." United States v. Scott, 437 U.S. 82, 86, 98 S.Ct. 2187, 2191, 57 L.Ed.2d 65 (1978), quoting Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223-24, 2 L.Ed.2d 199 (1957). Under this approach, the protection of the rule applies only after a defendant has been convicted or acquitted  after the complete disposition of the action against him. Crist v. Bretz, 437 U.S. 28, 33, 98 S.Ct. 2156, 2159, 57 L.Ed.2d 24 (1978). However, this concept has not been interpreted as an absolute foreclosure of review of a judgment of the trial court in its disposition of criminal cases. United States v. Wilson, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). Thus we must examine the federal precedent to ascertain those factors which determine when the trial judgment is to be given the cloak of finality precluding further review.
The key question in the examination of this aspect of the double jeopardy protection is what is considered a final determination of guilt or innocence for this purpose. Interestingly, the concept of finality was never interpreted as precluding review of the entry of judgment in a criminal case by way of appeal. Rather, the focus was upon the second prosecution which was deemed offensive.
In the course of the debates over the Bill of Rights, there was no suggestion that the Double Jeopardy Clause imposed any general ban on appeals by the prosecution. . . . Nor does the common-law background of the Clause suggest an implied prohibition against state appeals. Although in the late 18th century the King was permitted to sue out a writ of error in a criminal case. . . ., the principles of autrefois acquit and autrefois convict imposed no apparent restrictions on this right. It was only when the defendant was indicted for a second time after either a conviction or an acquittal that he could seek the protection of the common-law pleas. The development of the Double Jeopardy Clause from its common-law origins thus suggests that it was directed at the threat of multiple *351 prosecutions, not at Government appeals, at least where those appeals would not require a new trial. United States v. Wilson, 420 U.S. 332, 342, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975).
This concept of the protection intended to be afforded by the Double Jeopardy Clause is clearly reflected in the U.S. Supreme Court's articulation of the central design of the guarantee:
". . . [to] protect an individual from being subjected to the hazard of trial and possible conviction more than once for an alleged offense. . . . The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the state with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent, he may be found guilty."
Green v. United States, supra, 355 U.S. at 187-88, 78 S.Ct. at 223-24 (1957). See also, Bullington v. Missouri, 451 U.S. 430, 445, 101 S.Ct. 1852, 1861, 68 L.Ed.2d 270 (1981); United States v. DiFrancesco, 449 U.S. 117, 127, 101 S.Ct. 426, 432, 66 L.Ed.2d 328 (1980); United States v. Scott, supra, 437 U.S. at 95, 98 S.Ct. at 2196; Crist v. Bretz, supra, 437 U.S. at 35, 98 S.Ct. at 2160; Burks v. United States, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978); Arizona v. Washington, 434 U.S. 497, 504 n. 13, 98 S.Ct. 824, 829 n. 13, 54 L.Ed.2d 717 (1978); United States v. Martin Linen Supply Co., 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977); United States v. Dinitz, 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976); Serfass v. United States, 420 U.S. 377, 387-88, 95 S.Ct. 1055, 1061-63, 43 L.Ed.2d 265 (1975); United States v. Wilson, supra, 420 U.S. at 353, 95 S.Ct. at 1027; United *352 States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971).[2]
Following this approach it has been firmly established where review would not subject the defendant to a second trial, a trial order favoring a defendant could be appealed without offending double jeopardy. United States v. Morrison, 429 U.S. 1, 97 S.Ct. 24, 50 L.Ed.2d 1 (1976) (per curiam) (Double jeopardy does not bar prosecutorial appeal from trial court order applying retroactively an appellate suppression ruling subsequent to the entering of a guilty verdict in a bench trial.) Successful appeal from the post-verdict suppression ruling would merely result in reinstatement of a guilty verdict rather than a retrial or "further proceedings, . . . devoted to the resolution of factual issues going to the elements of the offense charged." United States v. Jenkins, 420 U.S. 358, 370, 95 S.Ct. 1006, 1013, 43 L.Ed.2d 250 (1975). An exception to the rule that denies the state the opportunity to appeal from an acquittal is where the judgment of acquittal is entered by a trial court following a jury verdict of guilty. No retrial is required because the original verdict can be reinstated. Cf. United States v. Martin Linen Supply Co., 430 U.S. 564, 569-70, 97 S.Ct. 1349, 1353-54, 51 L.Ed.2d 642 (1977) (prosecution is precluded by double jeopardy bar from appealing from a directed verdict of acquittal following a hung jury).

B.
Our inquiry must now turn to when appellate review is permissible where the grant of a second trial is required to remedy the asserted claim of error. Although double jeopardy is a right afforded to protect the defendant, it is interesting to note that originally it was thought that a new trial was unavailable after appeal, whether requested by *353 the prosecution or the defendant. See United States v. Gibert, 25 F.Cas. 1287 (C.C.D.Mass.1834) (No. 15, 204) (Story, J.). However, this position was altered in United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), when the Supreme Court "made clear that a defendant could seek a new trial after conviction, even though the Government enjoyed no similar right." United States v. Wilson, supra, 420 U.S. at 353, 95 S.Ct. at 1027. Two considerations have been identified as being the basis for this holding. "First, the Court has recognized that society would pay too high a price were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in proceedings leading to conviction", United States v. Tateo, 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964). See also Burks v. United States, 437 U.S. 1, 15, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978). Second, the Court also recognized that retrial after a reversal of a conviction initiated by the defendant was not the type of governmental oppression targeted by the double jeopardy clause.[3]United States v. Scott, supra, 437 U.S. at 91, 98 S.Ct. at 2194; Tibbs v. Florida, 457 U.S. 31, 40, 102 S.Ct. 2211, 2217, 72 L.Ed.2d 652 (1982).
In a similar vein, double jeopardy has been determined not to require the prohibition of reprosecution where the defendant moves for a mistrial. Oregon v. Kennedy, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982); United States v. Scott, supra, 437 U.S. at 93, 98 S.Ct. at 2195; Lee v. United States, 432 U.S. 23, 30, 97 S.Ct. 2141, 2145, 53 L.Ed.2d 80 (1977); United States v. Dinitz, supra, 424 U.S. at 611, 96 S.Ct. at 1081; United States v. Jorn, supra, 400 U.S. at 476, 91 S.Ct. at 552. The rationale for this conclusion was explained by the Court in United States v. Scott, supra:

*354 Where . . . a defendant successfully seeks to avoid his trial prior to its conclusion by a motion for mistrial, the Double Jeopardy Clause is not offended by a second prosecution. "[A] motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by a prosecutorial or judicial error." United States v. Jorn, 400 U.S. 470, 485 [91 S.Ct. 547, 557, 27 L.Ed.2d 543] (1971) (opinion of Harlan, J.). Such a motion by the defendant is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact. "The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." United States v. Dinitz, 424 U.S. 600, 609 [96 S.Ct. 1075, 1080, 47 L.Ed.2d 267] (1976). But "[t]he Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." Id., at 611 [96 S.Ct. at 1081]. 437 U.S. at 93-94, 98 S.Ct. at 2194-2195 (emphasis added).
In Scott this rationale was found applicable to the situation where the defendant successfully moves for a dismissal "not on the merits." The Court could find, at least in some cases, no functional distinction between a dismissal "not on the merits" and a mistrial. Id. at 94, 98 S.Ct. at 2195, citing Lee v. United States, supra, 432 U.S. at 31, 97 S.Ct. at 2146. The defendant in Scott, both before trial and twice during trial, moved to dismiss two of three counts of the indictment on the grounds of prejudicial delay. The trial court granted defendant's motion after hearing all the evidence. The third count was submitted to the jury, which returned a verdict of not guilty. 437 U.S. at 84, 98 S.Ct. at 2190. On appeal the Supreme Court permitted retrial on the first two counts since the defendant himself sought dismissal on grounds "unrelated to factual guilt or innocence." Id. at 87, 98 S.Ct. at 2191.
*355 The Court reasoned that such a result does not conflict with the underlying purposes of double jeopardy:
But that situation [acquittal] is obviously a far cry from the present case, where the government was quite willing to continue with its production of evidence to show the defendant guilty before the jury first empaneled to try him, but the defendant elected to seek termination of the trial on grounds unrelated to guilt or innocence. This is scarcely a picture of an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact.

Id. at 96, 98 S.Ct. at 2196.
The Court concluded that "the Double Jeopardy Clause, which guards against government oppression, does not relieve a defendant from the consequences of his voluntary choice." Id. at 99, 98 S.Ct. at 2198. It held that double jeopardy does not bar a government appeal where the defendant successfully seeks to have the trial terminated "without any submission to either judge or jury as to his guilt or innocence." Id. at 101, 98 S.Ct. at 2199.
Scott makes clear that the real function of the Double Jeopardy Clause is to safeguard acquittals, rather than to bar successive trials per se. Whitebread, Criminal Procedure, § 24.03 (1980). Significant to its holding, however, is an understanding of what amounts to an acquittal. The Scott Court adopted the following definition:
[An acquittal occurs] only upon a jury verdict of not guilty [or when] the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.
United States v. Scott, supra, 437 U.S. at 97, 98 S.Ct. at 2197, citing United States v. Martin Linen Supply Co., supra, 430 U.S. at 571, 97 S.Ct. at 1354.
In essence, the Scott decision expanded considerably the government's right to appeal a defense initiated dismissal. *356 An appeal is barred only if the dismissal is the functional equivalent of an acquittal. See generally, Whitebread, supra at § 24.03.
Thus, where the Commonwealth initiates an appeal seeking a retrial following defendant's successful motion for dismissal, or has made the motion for a mistrial, the situation must be carefully construed to determine whether the subsequent trial would offend the prohibition against double jeopardy. Clearly, a retrial of the defendant after the first trial ended in a judgment of acquittal would be violative of the very essence of the double jeopardy guarantee. United States v. Scott, supra; United States v. Martin Linen Supply Co., supra; Fong Foo v. United States, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962). So too, where a mistrial is granted at the initiative of the prosecution or the court without a finding of "manifest necessity,"[4] a subsequent trial would be prohibited. See, e.g., United States v. Jorn, supra; Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963). It does not follow, however, that every termination of the trial favorable to the defendant is insulated from a government appeal. The above analysis of the United States Supreme Court decisions has made clear that every termination favorable to the defendant does not implicate double jeopardy concerns.
Having set forth the guidelines enunciated in Scott, we must now ascertain whether the demurrer, as utilized in criminal cases in this Commonwealth, amounts to the functional equivalent of an acquittal, or rather is equivalent to a dismissal "not on the merits." An acquittal, by definition, *357 represents a resolution in the defendant's favor, correct or not, of some or all of the factual elements of the offense charged. United States v. Scott, supra, 437 U.S. at 97, 98 S.Ct. at 2197, quoting United States v. Martin Linen Supply Co., supra, 430 U.S. at 571, 97 S.Ct. at 1354 (1977). By contrast, common law has always characterized a demurrer as an "issue as to law," as distinguished from an "issue of fact."
An issue upon matter of law is called a demurrer: and it confesses the facts to be true, as stated by the opposite party; . . . . As, if the matter of the plaintiff's complaint or declaration be insufficient in law, . . . . then the defendant demurs to the declaration; . . . .
3 W. Blackstone, Commentaries 314 (13th Ed.1800). This common-law description is identical in all material respects to the nature of the demurrer currently part of Pennsylvania criminal procedure.[5]
An early decision of the Superior Court, Commonwealth v. Williams, 71 Pa.Super. 311 (1919), described the essential nature of the demurrer in Pennsylvania Criminal law:
In criminal cases demurrer to the evidence of the Commonwealth admits all the facts which the evidence tends to prove, and all inferences reasonably deducible therefrom. Commonwealth v. Parr, 5 W. & S. 345; Golden v. Knowles, 120 Mass. 136; Wharton's Crim.Ev. Sec. 616; McKowen v. McDonald, 43 Pa. 441. The court in such case is not the trier of the facts. The admissions implied in the demurrer leave for consideration the single inquiry whether the evidence introduced presents such a state of facts, with the inferences fairly arising therefrom, as would support a verdict of guilty.

Id. at 313 (emphasis added).
In deciding whether to grant a demurrer, the court does not determine whether or not the defendant is *358 guilty on such evidence, but determines whether the evidence, if credited by the jury, is legally sufficient to warrant the conclusion that the defendant is guilty beyond a reasonable doubt. Commonwealth v. De Petro, 350 Pa. 567, 39 A.2d 838 (1944). Thus the test to be applied in ruling upon a demurrer is whether the Commonwealth's evidence and all reasonable inferences therefrom are sufficient to support a finding by the trier of fact that the accused is guilty beyond a reasonable doubt. Commonwealth v. Wimberly, 488 Pa. 169, 411 A.2d 1193 (1979); Commonwealth v. Mitchell, 460 Pa. 665, 334 A.2d 285 (1975); Commonwealth v. Carroll, 443 Pa. 518, 278 A.2d 898 (1971).
Hence, by definition, a demurrer is not a factual determination. As stated in Commonwealth v. Kerr, 150 Pa.Super. 598, 29 A.2d 340 (1943), "[t]he object of a demurrer to the evidence is to ascertain the law on an admitted state of facts." The trial judge may not pass upon the credibility of Commonwealth witnesses at the demurrer stage of the proceedings. Commonwealth v. Wimberly, supra, 488 Pa. at 172, 411 A.2d at 1194, citing Commonwealth v. Parrish, 250 Pa.Super. 176, 378 A.2d 884 (1977). The trial judge also is precluded from weighing the Commonwealth's evidence. Commonwealth v. Kelly, 237 Pa. Super. 468, 352 A.2d 127 (1975). Thus, the question before the trial judge in ruling on a demurrer remains purely one of law. Commonwealth v. Wimberly, supra; Commonwealth v. Haines, 410 Pa. 601, 190 A.2d 118 (1963).
We conclude, therefore, that a demurrer is not the functional equivalent of an acquittal, and that the Commonwealth has the right to appeal from an order sustaining defendant's demurrer to its case-in-chief. In such a situation, the defendant himself elects to seek dismissal on grounds unrelated to his factual guilt or innocence.[6]
*359 Our decision today does not establish a new principle of law  it is consistent with the law of this Commonwealth utilized prior to the Superior Court's ruling in Commonwealth v. Smalis, supra. In Commonwealth v. Wimberly, supra, we stated, "[i]t is well settled that an order granting a demurrer, properly entered,[7] is purely a question of law and is appealable by the Commonwealth." Id., 488 Pa. at 172, 411 A.2d at 1194, citing Commonwealth v. Long, 467 Pa. 98, 354 A.2d 569 (1976) and Commonwealth v. Simpson, 310 Pa. 380, 165 A. 498 (1933). We also stated in Wimberly, supra, that "[i]n those cases where this Court has concluded that a demurrer was granted in error, we have remanded for new trial." Id.
Accordingly, we reverse the Superior Court and remand Commonwealth v. Zoller, supra, where it was determined that the demurrer was granted in error, for a new trial. With regards to Commonwealth v. Smalis, supra, we remand to the Superior Court to pass upon the merits of the demurrer ruling entered by the trial court.[8]
NOTES
[1] In recent years the United States Supreme Court has made its interpretations of the double jeopardy clause applicable to the States under the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). As we suggested in Commonwealth v. Klobuchir, 486 Pa. 241, 405 A.2d 881 (1979), Article I § 10 of our Constitution affords protection co-extensive with that afforded under the federal double jeopardy clause. Id., 486 Pa. at 254, n. 12, 405 A.2d at 887-88, n. 12. See also Commonwealth v. Hude, 492 Pa. 600, 613, 425 A.2d 313, 320 (1980). Thus a separate discussion of our interpretation under Article I § 10 is unnecessary.
[2] Where a defendant has once been tried, convicted and punished for a particular crime, the same principles of fairness and finality require that he not be subject to further trial and punishment for the same offense where retrial is sought by the prosecution. United States v. Wilson, 420 U.S. 332, 343, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232 (1975); Ex Parte Lange, 85 U.S. 163, 172, 176, 18 Wall. 163, 172, 176, 21 L.Ed. 872 (1873).
[3] The Supreme Court has reasoned that when an appeal is successful, the appellant has either "waived" his plea of former jeopardy or, alternatively, that the original jeopardy is "continued" since the first conviction was not final. Green v. United States, 355 U.S. 184, 189, 78 S.Ct. 221, 224, 2 L.Ed.2d 199 (1957).
[4] The doctrine of "manifest necessity" was first articulated in United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824):

[T]he law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere.
[5] Pa.R.Crim.P. 1124(a)(1) provides:

(a) A defendant may challenge the sufficiency of the evidence to sustain a conviction of one or more of the offenses charged by a: (1) demurrer to the evidence presented by the Commonwealth at the close of the Commonwealth's case-in-chief.
[6] In both cases presently under consideration the defendant elected to seek a demurrer pursuant to Pa.R.Crim.P. 1124(a)(1), rather than the other options set forth in that rule. The Rule also provides:

(a) A defendant may challenge the sufficiency of the evidence to sustain a conviction of one or more of the offenses charged by a:
(2) motion for judgment of acquittal at the close of all the evidence;
(3) motion for judgment of acquittal filed within ten (10) days after the jury has been discharged without agreeing upon a verdict; or
(4) motion in arrest of judgment filed within ten (10) days after a finding of guilt.
[7] We do not address today those situations where demurrers are improperly granted, or act as the functional equivalent of an acquittal. That issue was adequately decided in Commonwealth v. Wimberly, 488 Pa. 169, 411 A.2d 1193 (1979).
[8] In Commonwealth v. Smalis, 331 Pa.Super. 307, 480 A.2d 1046 (1984), the Superior Court did not reach the merits of the Commonwealth's appeal. By contrast, in Commonwealth v. Zoller, 318 Pa.Super. 402, 465 A.2d 16 (1983), the Superior Court first found that the demurrer was improperly granted before dismissing the appeal.