532 A.2d 1246

Commonwealth of Pennsylvania, Department of Environmental Resources, Appellant *v.* Monarch Pallet Corporation, Appellee.

Argued April 20, 1987, before Judges MACPHAIL and BARRY, and Senior Judge KALISH, sitting as a panel of three.

*John R. Embick*, Assistant Counsel, for appellant.

*W. Boyd Hughes*, *Hughes* & *Nicholls*, for appellee.

OPINION BY JUDGE BARRY, October 30, 1987:

This is an appeal by the Department of Environmental Resources (DER) from an order of the Court of Common Pleas of Lackawanna County granting the demurrer of Monarch Pallet Corporation, appellee. Appellee had appealed to the trial court from a decision of a district justice which found appellee guilty of four counts of violating the Air Pollution Control Act (Act), Act of January 8, 1960, P.L. (1959) 2119, *as amended*, 35 P.S. §§4001-4015.

Appellee is the owner of a pallet manufacturing company. The testimony before the trial court shows that appellee sought to install an air contamination source which collected sawdust inside appellee's plant by means of a duct system and emitted the material through a flue. The construction and operation of such a system is governed by 35 P.S. 4006.1(a); 25 Pa. Code 127.11[1] and 35 P.S. 4006.1(b); 25 Pa. Code 127.21.[2]

---

[1] §4006.1. Permits

(a) On or after July 1, 1972, no person shall construct, assemble, install or modify any stationary air contamination source, or install thereon any air pollution control equipment or device or reactivate any air contamination source after said source has been out of operation or

Appellee was granted plan approval which authorized the construction and testing of the facility but began operation of the plant before a permit was issued. DER instituted four summary proceedings against appellee.

production for a period of one year or more unless such person has applied to and received from the department written approval so to do; Provided, however, That no such written approval shall be necessary with respect to normal routine maintenance operations, nor to any such source, equipment or device used solely for the supplying of heat or hot water to one structure intended as a one-family or two-family dwelling, or with respect to any other class of units as the board, by rule or regulation, may exempt from the requirements of this section. All applications for approval shall be made in writing and shall be on such forms and contain such information as the department shall prescribe and shall have appended thereto detailed plans and specifications related to the proposed installation.

§127.11. Requirements.

No person shall cause, suffer, or permit the construction or modification of any air contamination source or the reactivation of any air contamination source after such source has been out of operation or production for a period of one year or more, or the installation of any air cleaning device on any air contamination source, unless such construction, modification, reactivation, or installation has been approved by the Department.

[2] §4006.1. Permits

. . . .

(b) No person shall operate any stationary air contamination source which is subject to the provisions of subsection (a) of this section unless the department shall have issued to such person a permit to operate such source in response to a written application for a permit submitted on forms and containing such information as the department may prescribe. No permit shall be issued to any applicant unless it appears that, with respect to the source, the requirements of subsection (a) of this section have been met and that there has been performed upon such source a test operation or evaluation which shall satisfy the department that the air contamination source will not discharge into

Three counts charged appellee with unlawfully operating an air contamination source without a permit. The fourth count charged appellee with discharging visible fugitive emissions into the atmosphere in a manner which extended well beyond appellee's property line.[3] A district justice found appellee guilty on all four counts and imposed a fine of $100.00. Appellee appealed to the trial court which conducted a trial *de novo*. After taking testimony, the trial court granted appellee's demurrer on the basis that DER had previously *unconditionally* approved the plans for the flue system and that DER failed to complete the mandated monitoring and

_____

the outdoor atmosphere any air contaminants at a rate in excess of that permitted by applicable regulation of the board, and which will not cause air pollution. Permits issued hereunder may contain such conditions as the department deems necessary to assure the proper operation of the source. Each permittee, on or before the anniversary date set forth in his permit, shall submit to the department an annual report containing such information as the department shall prescribe relative to the operation and maintenance of the installation under permit.
§127.21. Requirements.

No person shall cause, suffer, or permit the operation of any source, the construction, modification, or reactivation of which, or the installation of air cleaning device on which, is subject to the provisions of §127.11 of this title (relating to requirements), unless the Department has issued a permit to operate such source.

[3] §123.2. Fugitive particulate matter.

No person shall cause, suffer, or permit fugitive particulate matter to be emitted into the outdoor atmosphere from any source or sources specified in §123.1(a)(1)—(9) (relating to prohibition of certain fugitive emissions) if such emissions are visible, at any time, at the point such emissions pass outside the person's property.

testing under 25 Pa. Code §127.12.[4] The trial court concluded that DER's testimony was legally insufficient to show that appellee was guilty beyond a reasonable doubt. On appeal DER argues that the evidence adduced at trial easily establishes that appellee is guilty of operating without a permit and in discharging visible fugitive emissions into the atmosphere beyond its property line. It contends that the trial court confused *plan* approval with *permit* approval and further asserts that the trial court misinterpreted Section 127.12 as requiring DER to conduct the testing which the trial court found it failed to complete.

---

[4] §127.12. Content of applications.

(a) Applications for approval shall:

(1) identify the location of the source.

(2) contain such information as is requested by the Department and as is necessary to perform a thorough evaluation of the air contamination aspects of the source.

(3) show that the source will be equipped with reasonable and adequate facilities to monitor and record the emissions of air contaminants and any operating conditions which may affect the emissions of air contaminants.

(4) show that the source will comply with all applicable requirements of this Article and those requirements promulgated by the Administrator of the United States Environmental Protection Agency pursuant to the provisions of the Clean Air Act (42 U.S.C. §1857 §§7401—7706 et seq.).

(5) show that the emissions from a new source will be the minimum attainable through the use of the best available technology.

(6) when requested by the Department, show that the source will not prevent or adversely affect the attainment or maintenance of ambient air quality standards.

(7) contain a plan of action for the reduction of emissions during each level specified in Chapter 137 of this title (relating to air pollution episodes).

(b) The Department will not approve any application which fails to meet the requirements of subsection (a) of this section. Any approval may be granted with appropriate conditions.

Prior to its argument on the merits, DER points out that the grant of a demurrer by the trial court does not bar an appeal on the ground of double jeopardy. It cites *Commonwealth v. Zoller*, 507 Pa. 344, 490 A.2d 394 (1985). This case is no longer the law in Pennsylvania. It has been reversed by the United States Supreme Court, in *Smalis v. Pennsylvania*, 476 U.S. 116 (1986).[5] According to *Smalis*, the grant of a demurrer is a functional equivalent of an acquittal. DER's appeal to this Court is thus barred because of the doctrine of double jeopardy.

ORDER

NOW, October 30, 1987, the order of the Lackawanna County Court of Common Pleas, dated March 4, 1986, sustaining appellee's appeal and granting its demurrer is affirmed.

---

[5] Counsel for DER, pursuant to Pa. R.A.P. 2501, advised this Court, by letter of April 19, 1987, that *Zoller* had been overruled by the U.S. Supreme Court in *Smalis*. In both *Zoller* and *Smalis* a demurrer was granted by their respective trial courts, *Zoller* in the Court of Common Pleas of Beaver County and *Smalis* in the Court of Common Pleas of Allegheny County. In July of 1983, the Pennsylvania Superior Court quashed the Commonwealth's appeal in *Commonwealth v. Smalis*, 331 Pa. Superior Ct. 307, 480 A.2d 1046 (1984), on the principle of double jeopardy. In *Commonwealth v. Zoller*, 318 Pa. Superior Ct. 402, 465 A.2d 16 (1983), the Superior Court quashed a similar appeal by the Commonwealth. The Pennsylvania Supreme Court consolidated the two appeals, reversed the Superior Court on the double jeopardy issue and remanded *Smalis* to the Superior Court for a finding on the propriety of the trial court's grant of a demurrer. The Pennsylvania Supreme Court also reversed and remanded *Zoller* for a new trial. 507 Pa. 344, 490 A.2d 394 (1985). *Smalis* filed a petition for writ of certiorari to the U.S. Supreme Court which the court granted. After argument, the U.S. Supreme Court reversed.