672 A.2d 796

COMMONWEALTH of Pennsylvania, Appellant,

v.

James P. MICKLOS.

Superior Court of Pennsylvania.

Argued Nov. 2, 1995.

Filed Feb. 28, 1996.

564

Iva C. Dougherty, Assistant District Attorney, Reading, for Commonwealth, appellant.

Robert S. Trotuer, Allentown, for appellee.

Before ROWLEY, President Judge,* and TAMILIA, KELLY, POPOVICH, HUDOCK, JAMIESON,** CERCONE, BROSKY and OLSZEWSKI, JJ.

CERCONE, Judge:

We considered this case *en banc* primarily to determine whether the Commonwealth may appeal from an order of court which granted a criminal defendant's suppression motion and concurrently dismissed all charges filed against that defendant, thereby preventing the Commonwealth from pursuing its right to appeal the adverse rulings of a suppression court. After reviewing the circumstances of this case in light of the applicable law, we conclude that the challenged Com-

* President Judge Rowley did not participate in the consideration or decision of this case.

** Jamieson, J. did not participate in the consideration or decision of this case.

monwealth appeal does not implicate principles of double jeopardy.

On April 24, 1993, at approximately 10:10 p.m., members of an ambulance crew for the Kutztown Basic Life Support Unit, saw the driver of a tan Ford Ranger pickup truck, appellee James P. Micklos, swerve across the center line on State Route 222 and nearly collide with a car. N.T. 1/11/94 at 3–4. The crew followed the truck for about one mile, monitoring the driver's erratic weaving motions, and then radioed local police. N.T. 1/11/94 at 5–6. Patrolman Thomas Glass, a part-time police officer for the Fleetwood Police Department, responded to the call and joined the ambulance near the intersection of Routes 222 and 662. N.T. 1/11/94 at 15. Once the crew chief pointed to the vehicle that had been swerving, Officer Glass pulled in behind the truck and immediately activated his emergency lights and siren to alert the driver to pull off the road. The driver continued at a slow speed for two and one-half miles before ultimately complying. N.T. 1/11/94 at 16–17. Because the vehicles were entering into the jurisdiction of the Northeastern Berks Regional Police Department, Officer Glass requested that department's assistance. Sergeant Michael Weiser responded to the request within a matter of minutes. N.T. 1/11/94 at 19.

Officer Glass demanded appellee's license, insurance and registration and, after some difficulty, appellee produced that information. N.T. 1/11/94 at 18. According to Sergeant Weiser, appellee exuded a moderate odor of alcohol, and appellee's eyes were bloodshot. N.T. 1/11/94 at 32. Because Officer Glass was not certified to conduct field sobriety tests, he deferred to the experience of Sergeant Weiser. N.T. 1/11/94 at 19. After appellee failed these sobriety tests, the officers arrested him and escorted him to a DUI processing center where his blood alcohol content was determined to be 0.140%.[1] N.T. 1/11/94 at 47. At no time did either officer personally observe appellee's erratic driving.

1. Appellee was charged with three counts of Driving Under the Influence of Alcohol or Controlled Substance. 75 Pa.C.S.A. §§ 3731(a)(1), 3731(a)(4) and 3731(a)(5).

The Honorable Jeffrey K. Sprecher presided over a nonjury trial. At the close of testimony, defense counsel asked the trial court to "address the issue of probable cause to stop the vehicle." N.T. 1/11/94 at 75. The trial court inquired as to whether the "issue of probable cause [can] be raised at the time of trial if it's not raised at the time of suppression? Is it waived?" N.T. 1/11/94 at 77.

After receiving the parties' briefs on that issue, the lower court, on March 15, 1994, issued Findings of Fact and Conclusions of Law in Disposition of Defendant's Omnibus Pretrial Motion. The trial court concluded that Patrolman Glass did not have probable cause to stop appellee's vehicle and that the evidence gathered as a result of the improper stop must be suppressed. Findings of Fact and Conclusions of Law in Disposition of Defendant's Omnibus Pretrial Motion filed March 15, 1994 at 2. Consequently, the court issued an order on that same date granting "Defendant's oral suppression motion" and concurrently dismissing all charges. Trial court order filed March 15, 1994.

On appeal from that order, the Commonwealth argued that the lower court erred in considering an oral suppression motion presented after the close of evidence, in suppressing evidence, and in dismissing the charges after granting the suppression motion. Although the trial judge defended his grant of the suppression motion, he conceded that he had erred in dismissing the charges. Trial court opinion dated June 15, 1994 at 4. A majority of a panel of this court declined to address the issues raised in the Commonwealth's appeal after concluding that a remand to the trial court would place appellee in double jeopardy. *Commonwealth v. Micklos*, (slip opinion filed March 29, 1995 at 4) (Johnson, J. dissenting). We granted the Commonwealth's petition for reargument before this Court *en banc*.

Before considering the substance of the issues raised on appeal, we wish to address a discrepancy in the record. The trial court, in its Findings of Fact, made the following observation:

At the commencement of the bench trial, Mr. Micklos made an oral motion to suppress the evidence gained from the allegedly illegal stop of his vehicle. The Commonwealth protested that this suppression motion was untimely filed pursuant to Rule 323 of the Pennsylvania Rules of Criminal Procedure and should not be heard. Counsel agreed that the matter should be briefed.

In an effort aimed at judicial economy and the convenience of witnesses, it was decided that the taking of evidence not be delayed pending decision on the timeliness of the suppression motion. It was agreed that if it was determined that the content of the suppression motion was deemed waived by Criminal Procedure Rule 323 then the proffered evidence would constitute the bench trial and an appropriate verdict would be rendered. If, on the other hand, the suppression motion was ruled timely then the evidence would be considered first as to its admissibility. The decision on the suppression motion would then dictate what evidence, if any, would be considered as to the bench trial.

Findings of Fact and Conclusions of Law in Disposition of Defendant's Omnibus Pretrial Motion filed March 15, 1994 at 1. Despite an exhaustive review of the record certified to this Court on appeal, including the notes of testimony, we have been unable to locate any oral suppression motion made by appellee at the beginning of trial. Nor do the docket sheets refer to that suppression motion.

An appellate court is bound by a suppression court's findings of fact if those findings are supported by the record. *Commonwealth v. Bennett*, 412 Pa.Super. 603, 606, 604 A.2d 276, 277 (1992) (quoting *Commonwealth v. Stine*, 372 Pa.Super. 312, 314, 539 A.2d 454, 455 (1988)). We are not bound by factual findings wholly lacking in evidence. *Id.* For purposes of appellate review, what is not of record does not exist. *Commonwealth v. Dietterick*, 429 Pa.Super. 180, 188, 631 A.2d 1347, 1351 (1993), *appeal denied*, 538 Pa. 608, 645 A.2d 1312 (1994). Consequently, we must proceed under the assumption

that defense counsel first presented the motion to suppress at the close of testimony.

Preliminarily, we must determine whether the double jeopardy clauses of the Federal and State Constitutions [2] bar a Commonwealth appeal from an order granting a defendant's suppression motion and concurrently dismissing all charges filed against that defendant. In general, the double jeopardy clause protects a defendant from being harassed by multiple prosecutions for the same. wrongful act and against multiple punishments for the same crime. *Commonwealth v. Rightley,* 421 Pa.Super. 270, 276, 617 A.2d 1289, 1292 (1992). The protections afforded by the double jeopardy clauses of the United States and Pennsylvania Constitutions are co-extensive. *Commonwealth v. Lively,* 530 Pa. 464, 467, 610 A.2d 7, 8 (1992). In a criminal jury trial, jeopardy attaches when the jury is sworn. In a bench trial, however, jeopardy attaches when the trial court begins to hear the evidence. *Commonwealth v. Metzer,* 430 Pa.Super. 217, 231 n. 4, 634 A.2d 228, 234 n. 4 (1993).

According to the trial court, jeopardy never attached in this case. Specifically, the trial judge claims that his "decision to hear the suppression motion, and the dismissal of charges ruling prohibiting introduction of evidence stemming from the illegal stop, means, in effect, that a bench trial was never reached." Trial court opinion dated June 15, 1994 at 3. We cannot agree. *See United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1354–1355, 51 L.Ed.2d 642 (1977) (trial court's characterization of its action is not determinative).

This court has previously been asked to consider whether a lower court proceeding constituted a suppression hearing or a trial in assessing the propriety of a Commonwealth appeal. *Commonwealth v. Jung,* 366 Pa.Super. 438, 531 A.2d 498 (1989). In *Jung,* a jury had previously found appellee not guilty of assault. During that trial, the Commonwealth introduced into evidence a taped telephone conversation. Appellee,

2. U.S. Const. amends. V, XIV; Pa. Const. art. I, § 10.

the recorder of that conversation, was subsequently charged with violations of the Wiretap and Electronic Surveillance Control Act and, after waiving his right to a jury, proceeded to a second trial. *Id.* at 439–40, 531 A.2d at 499.

At that second trial, the lower court ordered the Commonwealth to call its first witness. In a requested offer of proof, the Commonwealth revealed that the witness would be used to introduce the tape and a transcript thereof into evidence. *Id.* at 440, 531 A.2d at 499. The trial court ruled that the Wiretap Act did not apply to the conduct of private citizens and sustained appellee's objection to the introduction of the tape. After denying the Commonwealth's request to appeal that ruling, the trial court found appellee not guilty and dismissed the charges. *Id.*

On appeal, the Commonwealth characterized appellee's objection as a suppression motion and the proceeding below as a pre-trial hearing at which jeopardy had not yet attached. *Id.* at 441, 531 A.2d at 499. To the contrary, the court noted that double jeopardy attaches in a bench trial when the accused has been subjected to a charge and the trial court has begun to hear the evidence. *Id.* at 443, 531 A.2d at 500–501. In *Jung,* it was beyond dispute that the accused was subjected to a charge. Further, by requesting an offer of proof, the trial court had begun to hear the evidence. "[T]hough the proceeding itself was brief and no witnesses actually testified, a trial in which double jeopardy attached had taken place." *Id.* at 443, 531 A.2d at 500–501.

■ Similarly, in the case at issue, the lower court presided over a bench trial, not a suppression hearing. Appellee had been charged with violations of the Motor Vehicle Code. Moreover, the trial court had not only begun to hear the evidence, but had actually concluded the evidentiary portion of the trial. As such, we are presented with a trial at which jeopardy had attached.

■■ According to principles of double jeopardy, as codified in the Pennsylvania Crimes Code, when a prosecution is premised on a violation of the same provision of the statutes

and the same facts as a former prosecution, that prosecution is barred if "[t]he former prosecution resulted in an acquittal...." 18 Pa.C.S.A. § 109. "A judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by a reversal." *United States v. Scott*, 437 U.S. 82, 91, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978). This principal reflects the purposes underlying the prohibition against double jeopardy:

> [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Id.* at 87, 98 S.Ct. at 2192 (quoting *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)). A defendant is acquitted only when "the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged." *Id.* (quoting *Martin Linen Supply Co.*, *supra*, 430 U.S. 564, 97 S.Ct. 1349). *See Commonwealth v. Smalis*, 331 Pa.Super. 307, 480 A.2d 1046 (1984) (*en banc*), *rev'd, Commonwealth v. Zoller*, 507 Pa. 344, 490 A.2d 394 (1985), *rev'd, Smalis v. Pennsylvania*, 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986), order of Superior Court reinstated, 511 Pa. 229, 512 A.2d 634 (1986) (by sustaining a defense demurrer, a trial court determines that the Commonwealth's evidence is insufficient to sustain a conviction and therefore enters the functional equivalent of an acquittal); *In the Interest of E.J.*, 397 Pa.Super. 120, 579 A.2d 960 (1990) (by "discharging" defendants after citing insufficient evidence as grounds, a trial court makes a factual, not a legal, determination that is not subject to a Commonwealth appeal). Accordingly, we must ascertain whether the dismissal in this case represented a resolution of some or all of the factual elements

of the offense charged, *i.e.*, an acquittal, or a legal determination unrelated to guilt or innocence.

As stated, defense counsel, at the close of testimony, moved to suppress evidence seized pursuant to a stop allegedly conducted by a police officer absent probable cause. After reviewing the parties' briefs, the trial court issued Findings of Fact and Conclusions of Law and an order granting appellee's suppression motion. *See* Pa.R.Crim.P. 323(i), 42 Pa.C.S.A. (provides that at the conclusion of a suppression hearing, the trial judge "shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought"). The trial court further ordered that the charges filed against appellee be dismissed.

We begin by observing that the trial court lacked power to dismiss before allowing the Commonwealth an opportunity to appeal the adverse suppression ruling. When the Commonwealth certifies, as in this case, that an order granting a defendant's motion to suppress will terminate or substantially handicap the prosecution, it is entitled to an appeal as of right. Pa.R.A.P. 311(d), 42 Pa.C.S.A. By entering an order granting suppression and concurrently dismissing all charges, the trial court deprived the Commonwealth of any opportunity to exercise its absolute right to appeal from adverse suppression rulings.

Without a right of appeal ..., the Commonwealth is completely deprived of *any opportunity* to secure an appellate court evaluation of the validity of the order of suppression ... to deny the Commonwealth its only opportunity of securing an appellate review to determine whether the evidence was properly suppressed is highly unfair to the Commonwealth and the interests of society which it represents. In our zeal to protect and preserve for the accused every constitutional right to which he is entitled we too often forget and neglect to preserve the rights of society which, too, are entitled to consideration.

*Commonwealth v. Bosurgi,* 411 Pa. 56, 63–64, 190 A.2d 304, 308, *cert. denied,* 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963) (emphasis in original).

Nevertheless, that the trial court predicated its dismissal on a legal error is irrelevant to a double jeopardy analysis if that dismissal constitutes an acquittal or its functional equivalent.

The fundamental nature of [the double jeopardy] rule is manifested by its explicit extension to situations where an acquittal is "based upon an egregiously erroneous foundation." *Fong Foo v. United States,* 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962). . . . In *Fong Foo* the Court of Appeals held that the District Court had erred in various rulings and lacked power to direct a verdict of acquittal before the Government rested its case. [footnote omitted]. We accepted the Court of Appeals' holding that the District Court had erred, but nevertheless found that the Double Jeopardy Clause was "violated when the Court of Appeals set aside the judgment of acquittal and directed that petitioners be tried again for the same offense." 369 U.S., at 143, 82 S.Ct., at 672. Thus when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous.

*Sanabria v. United States,* 437 U.S. 54, 64, 98 S.Ct. 2170, 2178–2179, 57 L.Ed.2d 43 (1978).[3]

In the instant case, the challenged dismissal cannot be construed as the functional equivalent of an acquittal. When presented with a suppression motion, the trial court is not asked to resolve questions related to factual guilt or innocence or to the sufficiency of the evidence. Rather, the

---

3. Similarly, the appellate court in *Commonwealth v. Jung, supra,* determined that the trial court had erred in concluding that the Wiretap Act did not apply to the conduct of private citizens. That this erroneous ruling formed the basis for the trial court's finding of not guilty and dismissal of the charges did not affect the appellate court's resolution of the case. "The trial court's verdict of acquittal is final, no matter how erroneous its decision may be." *Commonwealth v. Jung,* 366 Pa.Super. 438, 443, 446, 531 A.2d 498, 500, 502 (1987).

suppression court is called on to determine whether the Commonwealth has met its burden of establishing by a preponderance of the evidence that the challenged evidence was not obtained in violation of a defendant's rights. Pa.R.Crim.P. 323(h), 42 Pa.C.S.A. Accordingly, the trial court in this case determined only that Patrolman Glass lacked the requisite grounds to stop appellee's vehicle and that evidence derived from that stop must be excluded. Findings of Fact and Conclusions of Law dated March 15, 1994 at 2. In the findings which accompanied the dismissal order, the trial court made no reference to what evidence it would consider in reviewing sufficiency. Nor did the lower court allude to its assessment of appellee's factual guilt or innocence. To the contrary, the trial judge characterized the dismissal as an improvidently granted suppression remedy. Trial court opinion dated June 15, 1994 at 4. Because the dismissal was predicated wholly on legal rather than factual grounds, it cannot be considered the functional equivalent of an acquittal. *See generally United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (Commonwealth may appeal from order granting defendant's motion to dismiss for preindictment delay because dismissal was predicated on grounds unrelated to guilt or innocence); *Commonwealth v. Smith,* 391 Pa.Super. 154, 570 A.2d 559 (1990) (district attorney's decision not to prosecute case after trial court granted suppression of evidence based on exclusionary rule was not an acquittal); *Commonwealth v. Adams,* 349 Pa.Super. 200, 502 A.2d 1345 (1986) (the trial court granted defendant's motion to dismiss for failure to prosecute because the Commonwealth's witnesses had failed to appear at trial; because the court made no factual determination as to defendant's guilt or innocence, dismissal was not the functional equivalent of an acquittal and did not bar reprosecution). Therefore, the Commonwealth's appeal from the order granting dismissal does not implicate principles of double jeopardy.

We shall now begin to address the merits of the issues raised in this appeal. The Commonwealth objected to an oral suppression motion presented by defense counsel at

the close of evidence. Rule 323(b) of the Pennsylvania Rules of Criminal Procedure stipulates:

> Unless the opportunity did not previously exist, or the interests of justice otherwise require, such motion [*i.e.*, a motion to suppress any evidence alleged to have been obtained in violation of the defendant's rights] shall be made only after a case has been returned to court and shall be contained in the omnibus pretrial motion set forth in Rule 306. If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived.

Pa.R.Crim.P. 323(b), 42 Pa.C.S.A. The trial court questioned the timeliness of the motion but nevertheless considered it in the interests of justice. The "interests of justice" exception provides a trial judge with discretion to excuse a party's tardy presentation of a suppression motion. *Commonwealth v. Kuhn*, 327 Pa.Super. 72, 76–77, 475 A.2d 103, 105 (1984) (relying on *Commonwealth v. Pinno*, 433 Pa. 1, 248 A.2d 26 (1968) (although defendant did not present his oral motion to suppress until the day of trial, the trial court exercised its discretion in choosing to address it).

"[Although] the scope of a trial court's discretionary powers to deal with the factual circumstances it confronts is broad, it is not unlimited. It necessarily follows that the requirement that appellate courts defer to that exercise of discretion is not without limitation either." *Commonwealth v. Powell*, 527 Pa. 288, 297, 590 A.2d 1240, 1244 (1991). Accordingly, an appellate court may assess the propriety of a trial court's exercise of discretion when it is apparent there was an abuse of that discretion. *Id.* A mere error of judgment does not constitute an abuse of discretion. *Commonwealth v. Kocher*, 529 Pa. 303, 306, 602 A.2d 1308, 1310 (1992). Rather, a trial court abuses its discretion "if in reaching a conclusion the law is *overridden or misapplied*, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will as shown by the evidence or the record...." *Id.* (quoting *Commonwealth v. Moyer*, 497 Pa. 643, 647, 444 A.2d 101, 103 (1982) (emphasis added)).

At the close of all testimony, counsel for appellee asked the trial court to consider the issue of probable cause to stop appellee's vehicle. The trial court heard arguments and requested briefs from both the defense and the prosecution regarding the propriety of a suppression motion filed beyond the time limits prescribed by Rule 323(b). After receiving the briefs, the trial judge exercised his discretion to consider the motion, granted the motion and concurrently dismissed the charges without affording the Commonwealth a full opportunity to attack the motion on its merits. We find that the trial court, by considering and ruling on a motion to suppress in this manner, committed an abuse of discretion.

A trial court, by excusing a party's failure to comply with the timing requirements of Rule 323(b), cannot thereby disregard the remaining rules governing suppression motions. Specifically, when a defendant files a motion to suppress, the trial judge is required to set a time for a hearing, either prior to or at trial "which shall afford the attorney for the Commonwealth a reasonable opportunity for investigation...." Pa. R.Crim.P. 323(e), 42 Pa.C.S.A. At that hearing, the Commonwealth bears the burden of going forward and establishing that the challenged evidence was not obtained in violation of the defendant's rights. *Id.*, Rule 323(h).

In this case, the trial judge presided not over a suppression hearing, but over a trial. At that trial, the Commonwealth sought to present sufficient evidence to satisfy the elements of the crimes charged. At a suppression hearing, however, the Commonwealth would seek to present sufficient evidence to establish that the officer, at the time of the stop, had reasonable and articulable grounds to suspect a violation of the Vehicle Code. 75 Pa.C.S.A. 6308(b)[4]; *Com-*

---

**4.** Section 6308(b) of the Motor Vehicle Code provides the police with the following authority:

Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such

576

*monwealth v. McElroy,* 428 Pa.Super. 69, 76, 630 A.2d 35, 39 (1993) (*en banc*). In ruling that the Commonwealth had failed to satisfy the latter burden, the trial court explained:

Patrolman Glass did not specify precisely what information he received as to the manner in which the vehicle was being operated. He indicated merely that he was told that the vehicle had been swerving. Although ambulance crew member Ronald Shirk provided details of the observed swerving, he did not testify as to what information was communicated to Patrolman Glass.

. . . .

There is no indication in the record that Patrolman Glass was informed as to the frequency or severity of this swerving. Did the vehicle, for example, leave its lane? If so, how many times and over what period of time? Was there traffic or other obstructions which might necessitate evasive actions?

Trial court opinion dated June 15, 1994 at 2, 4. As the trial court acknowledges, both the ambulance driver and the crew chief testified that appellee had caused his truck to swerve across the center line approximately three or four times over a span of only about one mile and had nearly collided with a passing car. They further described the existing traffic and highway conditions. Had the Commonwealth been confronted prior to or during trial with challenges to the propriety of the initial stop, it may have been able to establish that the arresting officer had been furnished with this information.

By allowing the defense to present a suppression motion after both parties had rested and by failing to provide the Commonwealth with an opportunity to re-open its case or recall witnesses to satisfy its burden of proving by a preponderance that the evidence was not obtained in violation of the rights of the accused, the trial court overrode the law governing suppression motions. The trial court was incapable of properly ruling on the suppression motion absent a suppres-

other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

sion hearing. In so acting, the trial court abused its discretion.

The trial court has also frustrated this Court's review of the merits of the suppression motion. As stated, the arresting officer testified that he was informed of a vehicle's swerving. The ambulance crew members detailed the frequency and severity of the swerving and noted that appellant had nearly collided with a passing car after leaving his lane of traffic. At no point during the trial did the officer confirm that he was aware of this information at the time he conducted the stop. Nor did the ambulance crew members avow that they had provided the officer with such details. Accordingly, we remand this matter with directions that the trial court comply with the rules governing suppression motions. Specifically, the trial court must conduct a suppression hearing to provide the Commonwealth an opportunity to establish that the challenged evidence was not obtained in violation of appellant's rights, i.e., that the officer, at the time of the stop, had reasonable and articulable grounds to suspect a violation of the Vehicle Code.

Order granting suppression and dismissing charges vacated. Case is remanded to trial court with directions. Superior Court jurisdiction is relinquished.

OLSZEWSKI, J. files a dissenting opinion in which KELLY, J. joins.

OLSZEWSKI, Judge, dissenting:

Since I find that the dismissal in this case was the functional equivalent of an acquittal, and that double jeopardy principles therefore prohibit this appeal, I must respectfully dissent.

Both the Federal and Commonwealth double jeopardy clauses protect citizens against multiple punishments or successive prosecutions for the same offense. *See* U.S. Const. amend. V; PA. Const. art. I, § 10. *See also Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7 (1992). "The double jeopardy prohibition is often described as a universal principle of reason, justice and conscience." *Commonwealth v. Bolden*, 472

Pa. 602, 631, 373 A.2d 90, 103 (1977) (citations omitted). It predates our own Federal and Commonwealth Constitutions, with origins that can be traced back to the Golden Ages of Greece and Rome. *Benton v. Maryland,* 395 U.S. 784, 794–795, 89 S.Ct. 2056, 2062–2063, 23 L.Ed.2d 707, 716 (1969). Today, it is deeply ingrained in Anglo–American jurisprudence. *Id.* at 796, 89 S.Ct. at 2063–2064, 23 L.Ed.2d at 717. "The critical consideration is that a defendant should be forced to 'run the gauntlet' of a criminal prosecution only once for a single offense." *Commonwealth v. Beck,* 502 Pa. 78, 81, 464 A.2d 316, 318 (1983) (citations omitted).

If a defendant is tried and acquitted, double jeopardy principles unequivocally bar retrial on the same offense. *Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717, 726 (1978) ("The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal."). *See also* 18 Pa.C.S.A. § 109 (codifying the double jeopardy principle that a defendant cannot be retried after acquittal). This unequivocal prohibition is intended to insure that the government does not use its superior resources to wear down a defendant and thereby enhance the possibility that an innocent individual could be found guilty. *See, e.g., United States v. DiFrancesco,* 449 U.S. 117, 129–131, 101 S.Ct. 426, 433–434, 66 L.Ed.2d 328, 341 (1980).

If a defendant is tried and acquitted, double jeopardy principles also unequivocally bar an appeal by the prosecution, if reversal on that appeal would lead to either a retrial or "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged." *Smalis v. Pennsylvania,* 476 U.S. 140, 146, 106 S.Ct. 1745, 1749, 90 L.Ed.2d 116, 122 (1986). The importance of this prohibition cannot be overstated. This Court has noted that "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '[a] verdict of acquittal ... could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.'" *Commonwealth v. Jung,* 366 Pa.Super. 438, 441–442, 531 A.2d 498, 500 (1987) (quoting *United States*

*v. Scott,* 437 U.S. 82, 91, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65, 74 (1978)). Thus, the Commonwealth cannot appeal even the most egregious error if the defendant has been acquitted and reversal on appeal would require a retrial or further proceedings relating to guilt or innocence.

In the instant case, a retrial would clearly be required if the Commonwealth successfully persuaded this Court to reverse the trial court's dismissal of the charges. Therefore, we agree with the majority that, notwithstanding any allegations of error, the propriety of this appeal hinges on whether appellee was acquitted in the proceedings below.

In defining an "acquittal" for double jeopardy purposes, the United States Supreme Court has held that the label applied to a particular action will not be determinative. *See, e.g., Scott,* 437 U.S. at 96–98, 98 S.Ct. at 2197, 57 L.Ed.2d at 78. "Rather, a defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.'" *Id.* (quoting *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642, 651 (1977)).

In *Smalis,* a unanimous United States Supreme Court firmly reiterated that "the category of acquittals includes 'judgment[s] ... by the court that the evidence is insufficient to convict.'" 476 U.S. at 144; 106 S.Ct. at 1748, 90 L.Ed.2d at 121 (quoting *Scott,* 437 U.S. at 91, 98 S.Ct. at 2194, 57 L.Ed.2d at 74). Thus, our review in the instant case must focus on whether the trial court's dismissal was, in substance, a judgment that the evidence was insufficient to convict.

In the proceedings below, appellee was charged with driving under the influence of alcohol, in violation of 75 Pa.C.S.A. § 3731(a)(1), (a)(4), and (a)(5). The trial court conducted a full trial and heard all of the substantive evidence against appellee. After both sides completed their presentations, the trial court noted, on the record, that it was surprised at the lack of any evidence regarding appellee's consumption of alcohol. N.T. 1/11/94 at 83; R.R. at 91a. Nevertheless, the court

commented that proof of this obviously key element of DUI could be supplied by an officer's testimony that he detected an odor of alcohol after stopping appellee's vehicle.  N.T. 1/11/94 at 83;  R.R. at 91a.

The above statements reveal the trial court's view that the evidence obtained from the vehicle stop was crucial to establishing the crime of DUI.  When the trial court subsequently determined that the stop was improper and that all evidence resulting from the stop had to be suppressed, a crucial element of the charged crimes could not be proven.  At this point, the trial court dismissed the charges against appellee, without comment.

Thus, the record establishes the following sequence of events:  The trial court presided over a bench trial in which the Commonwealth attempted to meet its burden of proof as to the crimes charged;  the court highlighted, after the trial, that the Commonwealth's evidence on a key element was nonexistent but for certain police evidence obtained after a vehicle stop;  the crucial police evidence was subsequently suppressed as fruit of the poisonous tree;  and the trial court then filed an order dismissing the charges.  Under these circumstances, I simply must conclude that the trial court's dismissal was, in substance, a determination that the Commonwealth's evidence was insufficient to prove appellee's guilt beyond a reasonable doubt.

In concluding otherwise, the majority does not attempt to analyze the substance of the trial court's action.  Instead, the majority simply focuses on the fact that a suppression motion had been filed, then notes that a suppression court's duty is solely to determine whether certain evidence was obtained in violation of a defendant's constitutional rights, and therefore concludes that the lower court, sitting in its suppression capacity, would not have considered the sufficiency of the evidence.  The flaw in this rather cursory analysis is the unsupported assumption that the lower court here was sitting solely in a suppression capacity.

While the trial court did have a suppression motion outstanding, it was also simultaneously presiding over a bench trial on the merits of the case. The result was an unusual hybrid proceeding that presented both suppression and guilt related issues. Under these unique circumstances, I cannot conclude that the trial court was sitting solely as a suppression court with an eye trained solely on suppression issues.

Even more disturbing than the majority's superficial characterization of the proceeding below is its direct contradiction of that characterization a mere three pages later. In discussing the merits of the Commonwealth's appeal, the majority states, "[i]n this case, the trial judge presided not over a suppression hearing, but over a trial. At that trial, the Commonwealth sought to present sufficient evidence to satisfy the elements of the crimes charged." Majority opinion at 575. *See also* majority opinion at 569 (". . . the lower court presided over a bench trial, not a suppression hearing. Appellee had been charged with a violation of the Motor Vehicle Code. Moreover, the trial court had not only begun to hear the evidence, but had actually concluded the evidentiary portion of the trial."). Therefore, it would seem that the majority recognizes, somewhat belatedly, that the trial court was not sitting solely as a suppression court with an eye trained solely on suppression issues. If the majority agrees that the lower court was not sitting solely in a suppression capacity, then it is improper for the majority to analyze the trial court's actions for double jeopardy purposes by simply positing that suppression courts do not usually decide issues relating to the sufficiency of the evidence.

For the foregoing reasons, I must conclude that the trial court's dismissal was predicated on the insufficiency of the evidence, and, therefore, was the functional equivalent of an acquittal. Since appellee was acquitted in the proceedings below, I would hold that this appeal, which seeks a reversal and a re-trial, is absolutely prohibited. *See Smalis,* 476 U.S. at 145–146, 106 S.Ct. at 1749, 90 L.Ed.2d at 122.

KELLY, J., joins.