J-S40010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERNEST E. BLAKEMORE, II | : | |
| | : | |
| Appellant | : | No. 1609 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 10, 2023
In the Court of Common Pleas of Delaware County
Criminal Division at No: CP-23-CR-0000720-2020

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY STABILE, J.: **FILED FEBRUARY 21, 2025**

Appellant, Ernest E. Blakemore, II, broke into the home of an elderly pastor, where he stole jewelry and repeatedly struck the pastor in the head with a crowbar. A jury convicted Appellant of aggravated assault, burglary, and possession of an instrument of crime ("PIC"). The trial court sentenced Appellant to an aggregate term of 21½-43 years' imprisonment with one year of reentry supervision under 61 Pa.C.S.A. § 6137.2. In this direct appeal, we hold that the trial court properly denied Appellant's motion to reopen the record in his suppression hearing. We conclude, however, that the imposition of reentry supervision was an unconstitutional *ex post facto* punishment because Appellant's crimes took place before Section 6137.2 took effect. Accordingly, we vacate this term of Appellant's sentence. We affirm the order on review in all other respects.

The record reflects that on November 12, 2019, Appellant used a crowbar to break into a residence in Chester owned by Gilbert Hamm, a 72-year-old pastor, and his wife. Hamm and his wife had left their home earlier that day. Hamm returned home first and found the front door jamb broken. As Hamm began to enter the home, Appellant struck Hamm over the head with the crowbar. While Hamm was bleeding profusely from his head wound, calling for his wife, and asking neighbors for help, Appellant took a backpack filled with Mrs. Hamm's jewelry and fled the scene. Hamm survived but suffered multiple seizures from his injuries.

Hamm's nephew, who lived nearby, saw Appellant fleeing the house and called the police. He described the suspect as a black male wearing all black, with a black baseball cap. A short time later, officers observed Appellant approximately four blocks away from Hamm's house. Appellant matched the description given by Hamm's nephew. He was also carrying a crowbar and a backpack that appeared to be filled with objects. The police stopped Appellant, secured the crowbar, and waited for another officer to bring over Hamm's nephew, who immediately identified Appellant as the perpetrator. Hamm's wife later identified the jewelry recovered from Appellant's backpack as hers.

Detective Jamison Rogers interviewed Appellant at the police station. Before speaking to Appellant, the detective advised Appellant of his ***Miranda***[1]

---

[1] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

rights.    Appellant then signed and initialed a form confirming that he understood his rights and wanted to speak with the police.  In his recorded statement, Appellant confessed to committing the burglary and expressed remorse for his crimes.  He said that he had seen Hamm's wife leave the house and assumed it would be empty.  He was going around the house, grabbing items that he thought he could sell, when Hamm confronted him.  He struck Hamm in the head with a crowbar and fled the house.

Appellant filed a motion to suppress the evidence recovered from his backpack that he was carrying at the time of his arrest.  He argued that his backpack was illegally searched without a warrant, evidence was illegally seized from the backpack, and that no exigent circumstances justified a warrantless search.  Motion To Suppress, 11/18/20, at ¶¶ 2-3, 5.

On Tuesday, May 11, 2021, the court held a suppression hearing in which two officers testified about Appellant's stop. Detective Rogers testified about Appellant's confession as follows:

> **Commonwealth:** Okay. And prior to interviewing [Appellant] did you say anything to him?
>
> **Detective Rogers:** Yes. I informed him of his rights. I read him his ***Miranda*** rights in which he did indicate that he understood.  I not only read them -- his rights verbally but I also presented him with a form in which it lists a total of five questions all the way up to understanding your rights and understanding the English language of what you did, initial each question and sign on the bottom indicating that he did want to speak to me.  And at that point I began the recorded statement.

N.T. Suppression Hearing, 5/11/21, at 33.

The Commonwealth also introduced a recording of Appellant's confession and played the portion where he confirmed he had been advised of his *Miranda* rights. After the prosecutor finished questioning Detective Rogers, defense counsel claimed that he did not know that Appellant made a statement to the police. Counsel admitted, however, that the Commonwealth emailed him a copy of the recording on Friday of the previous week, four days before the hearing. *Id.* at 36. He claimed that he had already left his office at that point and that he did not check his emails when he returned on Monday, one day before the hearing. *Id.* at 36, 39.

Defense counsel questioned Detective Rogers about the content of the confession and then requested to speak to the judge in chambers. When the parties returned, Appellant pled guilty to aggravated assault and burglary in exchange for the Commonwealth's agreement not to seek the mandatory minimum sentence.

On June 23, 2021, the date scheduled for sentencing, the court stated at the beginning of the hearing, "[T]he suppression record is closed. That motion has been heard and the suppression record is closed. There's nothing further on suppression, correct?" N.T., 6/23/21, at 3. Defense counsel responded, "Correct." *Id.* The court stated, "[w]e're technically here for sentencing." *Id.* at 3-4. Minutes later, however, Appellant indicated that he wanted to withdraw his guilty plea. Before accepting the withdrawal, the court reminded Appellant that "we're already done with the suppression issues." *Id.* at 7. Appellant confirmed that he understood. The court continued the

- 4 -

case, reiterating that "[t]he suppression record is closed" and that the case would be listed "strictly for trial." *Id.* at 9.

On June 29, 2021, the court granted defense counsel's motion to withdraw his appearance. On June 30, 2021, the court entered an order denying the motion to suppress.

On July 29, 2021, new counsel entered an appearance for Appellant. On December 22, 2021, counsel filed a motion requesting reconsideration of the order denying suppression. The motion alleged that prior counsel "stopped asking questions" during the May 11, 2021 suppression hearing and "advised [Appellant] to enter a guilty plea. The hearing was not completed but the court entered an order denying the [suppression] motion." Motion For Reconsideration, 12/22/21, at ¶ 2. The motion continued that Appellant withdrew his guilty plea and now "wishes to litigate and complete" the motion to suppress. *Id.* at ¶ 4.

The court held a status hearing on the same date that the motion for reconsideration was filed. During the hearing, counsel asked the court to reopen the record for the motion to suppress because the suppression proceeding "was never finished." N.T., 12/22/21, at 4. The trial court responded:

> Well, let me stop you there . . . It was finished. I looked at this record. There were three witnesses called. All three were extensively examined during the suppression. And there was nothing further that [prior counsel] -- and after a conversation with [Appellant] wanted to pursue on suppression. I'll look at your motion. But if you look at the notes you'll see that again this was

extensively on May 11 an extensive suppression motion. This Court's not inclined to give two suppression motions for the same issues.

*Id.* at 4-5.

In an order docketed on December 31, 2021, the court denied the motion for reconsideration as untimely.

On January 10, 2022, Appellant filed a motion to reopen the record. Appellant argued this relief was warranted because: (1) the Commonwealth did not present evidence regarding the search of Appellant's backpack during the May 11, 2021 suppression hearing; and (2) there was "no opportunity for a hearing" on Appellant's confession. Motion to Reopen the Record, 1/10/23, at ¶¶ 11, 15. The court denied this motion.

The trial took place in early March 2023, and a jury found Appellant guilty of aggravated assault, burglary and PIC. On May 10, 2023, the court sentenced Appellant as outlined above. Appellant filed a timely post-sentence motion challenging the weight of the evidence, which was denied, and a timely appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

I) Whether the lower court erred by denying [Appellant's] requests to reconsider and reopen the suppression record so he could finish litigating his motion to suppress physical evidence and raise a challenge to the admissibility of his alleged statements, where the initial hearing was interrupted due to a subsequently withdrawn guilty plea when previous defense counsel first learned about a recorded interrogation[.]

II) Whether the court below illegally imposed one year of reentry supervision since [Appellant's] alleged conduct occurred before the effective date of 61 Pa.C.S.[A.] § 6137.2[.]

Appellant's Brief at 6.

Appellant first argues that the trial court abused its discretion by denying his motions to reconsider the order denying suppression and his motion to reopen the suppression record. He claims that "[t]he lower court lacked a complete record upon which to decide the search and seizure's legality, and [Appellant] never even had an opportunity to challenge his [confession]." Appellant's Brief at 15. We review the court's decision for abuse of discretion. *Commonwealth v. Micklos*, 672 A.2d 796, 802-03 (Pa. Super. 1996). For multiple reasons, we hold that the court properly exercised its discretion.

First, Appellant and his attorney agreed on the record that the suppression record was closed and that there would be no further proceedings relating to suppression.

It is well-settled that parties are bound by agreements that they make during court proceedings. *See Commonwealth v. Hemingway*, 13 A.3d 491, 500 (Pa. Super. 2011) (when Commonwealth, in its official duties, participates in a pretrial conference and agrees to provide grand jury transcripts to defendant, "it is bound by the agreements reached therein, just as the defendant is bound"); *Commonwealth v. Ortiz,* 854 A.2d 1280, 1284 (Pa. Super. 2004) (Commonwealth is bound by restitution agreement reached

with defendant); ***Commonwealth v. Impellizzeri****, 661 A.2d 422, 432 (Pa. Super. 1995) (but for defendant "opening the door," Commonwealth is bound by pretrial agreement to exclude evidence); ***Commonwealth v. McSorley****, 485 A.2d 15, 19 (Pa. Super. 1984) (terms of diversion agreement binding on the Commonwealth).

In this case, during a hearing on Appellant's motion to suppress, Appellant decided to plead guilty after the Commonwealth presented compelling evidence of his guilt, including a Mirandized confession that he gave shortly after his arrest. Several weeks later, however, on the scheduled date of sentencing, the court permitted Appellant to withdraw his guilty plea. According to Appellant, the court's decision was functionally equivalent to the grant of a new trial, *i.e.*, the decision "wiped the slate clean" and allowed Appellant to renew suppression litigation and raise any and all suppression issues that he wanted to raise. ***See*** Appellant's Brief at 14 (citing ***Commonwealth v. Paddy***, 800 A.2d 294, 311 (Pa. 2002)). We disagree.

When the court permitted Appellant to withdraw his plea, it emphasized repeatedly that the suppression record was closed and that the case would be listed strictly for trial. As the Commonwealth correctly observes, the court "repeatedly and unequivocally warned [Appellant] that withdrawing his guilty plea would *not* wipe the slate clean." Commonwealth's Brief at 13. In addition, defense counsel and Appellant expressly agreed on the record that the suppression record was closed. Appellant was bound by this agreement,

*see Hemingway*, *Ortiz*, *Impellizzeri*, *supra*, precluding him from requesting additional suppression hearings after his plea was withdrawn.

Appellant's reliance on **Commonwealth v. Ryan**, 442 A.2d 739 (Pa. Super. 1982), is misplaced. There, this Court found that the trial court abused its discretion in not permitting the Commonwealth to reopen the suppression record because it was not clear that the record had been closed. **Id.** at 745. "In fact, a review of the suppression proceedings below indicate[d] that all parties believed the suppression hearing to be in abeyance pending resolution of [an issue relating to the] burden of proof[.]" **Id.** The Commonwealth had made it clear "on several occasions before the suppression order" that it had testimony it intended to present. **Id.** In contrast, in the present case, the court repeatedly advised the parties that the suppression record was closed, and both Appellant and defense counsel agreed to this point on the record.

Denial of Appellant's motion to reopen the record was proper for a second, independent reason: Appellant's inability to satisfy the requisites of Pa.R.Crim.P. 581, the rule governing suppression proceedings. Rule 581(B) requires the defendant to include motions to suppress evidence within an omnibus pretrial motion. The omnibus motion "shall state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Pa.R.Crim.P. 581(D).

Rule 581 "is designed to provide one single procedure for the suppression of evidence[.]" Comment, Pa.R.Crim.P. 581.  A defendant cannot file supplemental motions to suppress "unless the opportunity did not previously exist, or the interests of justice otherwise require."  Pa.R.Crim.P. 581(B).  "The 'interests of justice' exception provides a trial judge with discretion to excuse a party's tardy presentation of a suppression motion."  ***Micklos***, 672 A.2d at 802-03.  "If the court determines that the evidence shall not be suppressed, such determination shall be final, conclusive, and binding at trial, except upon a showing of evidence which was theretofore unavailable[.]" Pa.R.Crim.P. 581(J).  Thus, a defendant is "not entitled to a second suppression hearing on the same issue" before trial unless he identifies some "previously unavailable evidence" that he needs to present.  ***Commonwealth v. Sample***, 468 A.2d 799, 802 (Pa. Super. 1983).

In ***Commonwealth v. Johonoson***, 844 A.2d 556 (Pa. Super. 2004), *disapproved on other grounds by* ***Commonwealth v. Livingstone***, 174 A.3d 609 (Pa. 2017), the defendant's suppression motion challenged only the voluntariness of his statement to the police.  After the trial court denied this motion, the defendant filed a supplemental motion to suppress in which he argued for the first time that the police lacked reasonable suspicion to detain him.  The trial court denied this supplemental motion as untimely.  This Court upheld the trial court, reasoning that the defendant "could have easily" raised this claim "during the initial suppression hearing[.]" ***Id.*** at 561.  The defendant

already "knew the facts and circumstances surrounding the stop" because a trooper had described the stop at the suppression hearing. *Id.*

Here, as in *Johonoson*, Appellant fails to present any valid reason in his brief for reopening the record. Although he claims that the trial court "lacked a complete record upon which to decide the search and seizure's legality," Appellant's Brief at 15, his brief fails to specify what he would have added to the record. This is because there was nothing to add; Appellant's own counsel confirmed on the day Appellant withdrew his plea that there was "nothing further on suppression." N.T., Sentencing Hearing, 6/23/21, at 3.

The record establishes that counsel was correct. The Commonwealth presented the testimony of two police officers concerning Appellant's arrest. The first witness, Officer Abreu, testified that he had received a radio call about the burglary shortly before he saw Appellant within four blocks of the crime scene. N.T., Suppression Hearing, 5/11/21, at 8. The radio call described the suspect as a "black male wearing all black with a black baseball cap." *Id.* Appellant matched this description, because he was wearing "all black" clothing as well as "a black baseball cap." *Id.* at 9. Appellant also was carrying a crowbar and a backpack "extremely stuffed with objects," *id.* at 9-10, items that were consistent with a burglary. Accordingly, Officer Abreu and his partner stopped Appellant, secured the crowbar, and waited for another officer to bring over an eyewitness. *Id.* at 11-12.

When the eyewitness identified Appellant as the man who fled the victim's house, the police arrested Appellant and searched his backpack incident to arrest.[2]  *Id.* at 12.  The second witness, Officer Ticknor, testified that he visited the crime scene and spoke with a neighbor[3] who had observed an individual leaving the victim's premises.  *Id.* at 19.  Officer Ticknor heard over the radio that another officer had stopped someone matching the description of the burglar.  *Id.*  Officer Ticknor drove the neighbor by the scene of the stop, and he identified Appellant as the person he had seen fleeing the house.  *Id.* at 19, 21.  Defense counsel thoroughly cross-examined Officers Abreu and Ticknor.  *Id.* at 13-16, 22-26.  Given this evidence, Appellant cannot credibly contend that he needed to reopen the record for presentation of further evidence concerning the legality of the search and seizure.

Appellant also argues that reopening the record is necessary to allow him to contest the legality of his confession.  Appellant's brief suggests that his confession only came to light in the middle of the suppression hearing and

_____

[2] In the trial court, Appellant complained in his motion to reopen the record that the Commonwealth's witnesses had not specified who searched his backpack, "where it was done and what items were recovered."  Motion to Reopen the Record, at ¶13.  This argument is absent from Appellant's brief in this Court.  Even if Appellant had raised this argument on appeal, we cannot see how it would have affected the outcome in view of the other compelling evidence of probable cause to stop Appellant and search his belongings for evidence of crime.

[3] The neighbor was later identified during trial as Hamm's nephew.

- 12 -

thus deprived Appellant and his attorney of an adequate opportunity to prepare a challenge to the confession. *See* Appellant's Brief at 14 ("The initial suppression hearing was interrupted by [Appellant's] open guilty plea . . . [Appellant] entered the plea when prior counsel became aware of a 'devastating' recorded 'confession' omitted from the complaint and earlier discovery").

This is simply not the case. While defense counsel claimed during the suppression hearing that he "didn't know that [Appellant] made a statement" to the police, N.T., Suppression Hearing, 5/11/21, at 36, he admitted that the Commonwealth sent him a recording of the confession four days before the hearing. *Id.* Contrary to the suggestion in Appellant's brief, this was not a case in which the Commonwealth ambushed Appellant with a confession *during* the suppression hearing. While the better practice would have been to send the confession to defense counsel further in advance of the suppression hearing, the disclosure of the confession four days before the hearing gave defense counsel adequate opportunity to prepare any defense or objection to the confession. Moreover, Appellant's brief fails to argue, let alone demonstrate, that he has new evidence concerning the legality of the confession that was unavailable at the time of the suppression hearing.

Rule 581 provides that the defendant cannot file supplemental motions to suppress "unless the opportunity did not previously exist, or the interests of justice otherwise require," and cannot obtain a second suppression hearing

- 13 -

on the same issue unless he identifies some "previously unavailable evidence" that he needs to present. Pa.R.Crim.P. 581(B, J). Because Appellant fails to meet these requirements, the court properly denied his motion for reconsideration and his motion to reopen the record.

In his next argument, Appellant maintains that the trial court erred by sentencing Appellant to one year of reentry supervision pursuant to 61 Pa.C.S.A. § 6137.2, because this statute was not in effect at the time of his crimes. The Commonwealth agrees, and we do as well, that the reentry portion of Appellant's sentence is illegal under the Ex Post Facto Clause of Article I, Section 17 of the Pennsylvania Constitution.

Section 6137.2 provides that if an individual is committed to the Department of Corrections[4] with an aggregate minimum term of imprisonment of four or more years, Section 6137.2 requires the trial judge to include a consecutive one-year term of reentry supervision. 61 Pa.C.S.A. § 6137.2(a, b). Section 6137.2(f) provides that this statute only applies to defendants sentenced after its effective date, December 18, 2019. After Section 6137.2 took effect, however, this Court narrowed the statute's reach in **Commonwealth v. Carey**, 249 A.3d 1217 (Pa. Super. 2021). There, the defendant was sentenced in 2020, after Section 6137.2 took effect, so the

_____

[4] Section 6137.2 refers to an individual being committed to the "department." Another statute in Title 61, however, defines "department" as "the Department of Corrections of the Commonwealth." 61 Pa.C.S.A. § 102.

trial judge ordered one year of reentry supervision. This Court found his sentence unconstitutional under the Ex Post Facto Clause, because the defendant committed his crimes in February 2019, before Section 6137.2 took effect. *Id.*, at 1229. We vacated this portion of the sentence, *id.*, noting that remand for resentencing was not required because our ruling did not disturb the trial court's sentencing scheme. *Id.* at 1229 n.10.

This case involves the same situation as **Carey**, because Appellant's crimes took place on November 12, 2019, before Section 6137.2 took effect. Therefore, as applied to Appellant, the imposition of a one-year term of reentry supervision "constitutes an unconstitutional *ex post facto* punishment." *Id.*, at 1229. Accordingly, we vacate the provision of Appellant's sentence imposing a one-year period of reentry supervision. Otherwise, Appellant's judgment of sentence remains intact. We do not remand for resentencing because our decision does not disturb the trial court's sentencing scheme. *Id.* at 1229 n.10.

Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/21/2025

- 15 -