J-S07008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

<table>
<tr><td>COMMONWEALTH OF PENNSYLVANIA</td><td>:</td><td>IN THE SUPERIOR COURT OF PENNSYLVANIA</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>v.</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>SUSAN LYNN ADAMS DIAZ</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Appellant</td><td>:</td><td>No. 184 MDA 2024</td></tr>
</table>

Appeal from the Judgment of Sentence Entered November 6, 2023
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001218-2021

BEFORE: NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:　　　　　**FILED: MARCH 4, 2026**

Appellant Susan Lynn Adams Diaz appeals from the judgment of sentence imposed after a jury convicted her of theft by failing to make required disposition of funds.[1]  On appeal, Appellant contends that the trial court erred by denying her Pa.R.Crim.P. 600 motion to dismiss, omnibus motion, and motions for a mistrial.  After review, we affirm.

The trial court summarized the relevant facts as follows:

The York Revolution is a minor league baseball organization [that] is [also] involved with community events [such as] Bike Night where the team reaches out to the motorcycle community . . . . Bike Night is used to help support the York County Motor Fund, an entity that helps raise money for police motorcycles.  Typically, during the preceding winter months, the Revolution would seek a sponsor for the event.  In the Spring, an entity would give sponsorship money to the Revolution in exchange for benefits such as promotion, advertising, and tickets.  After the event, a

_____

[1] 18 Pa.C.S. § 3927.

percentage of the ticket sales from Bike Night would be paid by the Revolution to the [York County] Motor Fund.

\* \* \*

[Clint Sheffer and Sue Renoll purchased the Laugerman Harley-Davidson dealership from Dave Laugerman in 2015 and renamed it First Capital Harley-Davidson.] In early 2016, [Appellant] approached First Capital to provide marketing services. She was hired as an independent contractor and served in that capacity for about 1.5 years.

Steve Stambaugh . . . [,]an attorney in the York area[,] was significantly involved in the motorcycle community, particularly with respect to charitable events. He was friends with Dave Laugerman and Sheffer.

Stambaugh met [Appellant] through First Capital in or about 2016.

Stambaugh was aware that [Appellant] handled the account for the [York County] Motor Fund.

Over the years, Stambaugh would co-sponsor various biker events, including the Revolution Bike Night, with both Laugerman Harley-Davidson and First Capital. Generally, the dealership would pay the full sponsorship fee for the Bike Night event directly to the Revolution and then Stambaugh would pay the dealership half of that amount. This was done with the understanding that a percentage of the ticket sales from Bike Night would be given to the [York County] Motor Fund by the Revolution.

Brandon Tesluk[,] the Director of Group and Hospitality Sales for the Revolution[,] was the person involved with organizing Bike Night during the period relevant to this prosecution.

In 2016, Tesluk, for the first time, worked with First Capital as the sponsor for Bike Night. Renoll introduced Tesluk to [Appellant], who was doing the marketing for First Capital. The sponsorship fee for that year was $ 2,500.00.

In 2017, the Revolution sought First Capital to sponsor that year's Bike Night for a fee of $2,950.00.

In 2018, [Appellant] offered to be the intermediary for Bike Night between First Capital and Stambaugh, on one hand, and the

Revolution, on the other. She indicated to Sheffer that she was in charge of promoting Bike Night.

In September 2018, [Appellant] reached out to Tesluk to contract for the 2019 Bike Night event. On September 26, 2018, [Appellant], through her business entity Be Blonde, signed a Sponsorship Agreement with the Revolution for the 2019 event for $2,950.00. . . . The sponsorship sum was due to the Revolution by June 1, 2019. The agreement provided that Be Blonde would "receive first-right to renew this contract" until December 31, 2019.

On October 2, 2018, Stambaugh . . . and First Capital each gave [Appellant] a check payable to the [York County] Motor Fund in the amount of $1,500.00 . . . as part of the 2019 Revolution Bike Night event per a "contract" with Be Blonde. They expected that the money would be paid to the Revolution as was the case in all prior years.

\* \* \*

The 2019 Bike Night event was held on July 27. First Capital and Stambaugh Law were advertised, and they received all of the expected amenities as part of the event.

On September 5, 2019, [Appellant] sent an email to Stambaugh, Sheffer and Renoll with a subject line of "2020 Bike Night with the Revolution." The email stated that "[t]he Revs just reached out to me about bike night for 2020. I hope we can count on your generous sponsorship again this year . . . They said that if I can confirm now, I can lock in the cost of $3,000.00 without an increase."

On September 9, 2019, [Appellant] approached Stambaugh in person to sponsor the 2020 York Revolution Bike Night. She presented him with a copy of the 2019 Be Blonde "contract" with the date "2019" crossed out and "2020" handwritten in its place. The document indicated that Stambaugh would receive 10 picnic tickets and be the "Naming right Sponsor." Camera ready artwork for signage and print advertising was due April 1, 2020, and the sponsorship payment payable to "YCMF" was due October 1, 2019. Stambaugh provided her a check that same day, as requested.

[Appellant] never paid the sponsorship fee nor [the $972.00 for additional tickets she secured for 2019 Bike Night]. Throughout the Fall of 2019 the Revolution attempted to get payment from

[Appellant] but was unsuccessful. As a result, the Revolution would not work with her for the 2020 event. Instead, in or about December 2019-January 2020, Tesluk approached First Capital and Stambaugh Law directly and learned that they had paid [Appellant] for the 2019 event.

*        *        *

Detective [Anthony] Fetrow . . . obtain[ed] [Appellant's] personal and business (Be Blonde) bank records at the White Rose Credit Union as well as the records for the Motor Fund [pursuant to a search warrant]. An examination of those records revealed [that Appellant was the only signatory on each account, that she had transferred money from the York County Motor Fund account to her personal account and the business account of her then boyfriend, and that she had failed to transfer funds to the appropriate parties such as the York Revolution, First Capital and Stambaugh.]

Trial Ct. Op., 1/17/24, at 1-5 (formatting altered and citations omitted).[2]

On November 18, 2020, the police filed a criminal complaint against Appellant. Defense counsel entered his appearance and filed a waiver of arraignment on March 31, 2021. The Commonwealth filed a criminal information on April 13, 2021, which was the same date on which Appellant's formal arraignment had originally been scheduled.

On April 16, 2021, Appellant filed a request for a bill of particulars, and the Commonwealth filed a response on April 22, 2021. Appellant then filed an application for the trial court to issue an order for a bill of particulars on April 29, 2021. Appellant also filed a motion to quash and dismiss the

_____

[2] We note that, because the trial court did not include an in-depth factual section in its Rule 1925(a) opinion, we have quoted the facts as set forth in the trial court's Memorandum Opinion, which was filed along with its order denying Appellant's post-sentence motion.

information on May 19, 2021, and an omnibus pretrial motion on July 3, 2021 (Original Omnibus). The trial court denied Appellant's motion to quash on July 6, 2021 and scheduled a suppression hearing for September 15, 2021.

On the day of the suppression hearing, Appellant filed a motion for a continuance and requested an extension of time to file a supplemental omnibus pretrial motion (Supplemental Omnibus). After the trial court rescheduled the suppression hearing for October 12, 2021, Appellant filed the Supplemental Omnibus on October 6, 2021. At the beginning of the October 12, 2021 hearing, the trial court denied Appellant's Original Omnibus as untimely, but allowed counsel to present testimony regarding the issues presented in the Supplemental Omnibus. *See* N.T. Mot. Hr'g, 10/12/21, at 12, 19-20.

During the hearing, after it became clear that the Honorable Amber A. Kraft had close personal relationships with certain individuals involved with the case, Judge Kraft recused herself from the matter. *See id.* at 69-71. The Honorable Craig T. Trebilcock was subsequently assigned to the case on October 13, 2021, but was ultimately recused after an alleged victim in the case was elected to the York County Court of Common Pleas.

In December of 2021, the Honorable John D. Kuhn, a senior judge on the Adams County Court of Common Pleas, was assigned to preside over the case. The Commonwealth filed a motion to schedule a status hearing on January 10, 2022. The trial court then scheduled, and subsequently held, a status hearing on April 27, 2022. Over the next several months, the trial court

- 5 -

held two additional hearings on Appellant's Supplemental Omnibus and disposed of other outstanding motions. On September 7, 2022, the trial court denied Appellant's Supplemental Omnibus.

On September 26, 2022, the trial court held a status hearing. *See* Trial Ct. Order, 9/26/22. At the conclusion of the hearing, the trial court noted that the Commonwealth had requested to consolidate three cases against Appellant, which Appellant opposed. *See id.* Consequently, the trial court set a briefing schedule directing Appellant to file a motion for severance within twenty-one days of receiving outstanding transcripts and directing the Commonwealth to respond to Appellant's motion within twenty days of Appellant's filing. *See id.* The trial court also scheduled a status hearing for November 18, 2022. *See id.*

On November 17, 2022, Appellant filed a motion for severance and, the following day, Appellant filed a motion seeking reconsideration of the order denying the Supplemental Omnibus. Also on November 18th, the trial court held the previously scheduled status hearing, which is memorialized in an order. *See* Trial Ct. Order, 11/21/22. Therein, the trial court directed the Commonwealth to file a response to Appellant's motions for severance and for reconsideration. *See id.* The trial court also noted that "[t]he Commonwealth will be ready to proceed to trial . . . during January, 2023" and that the Commonwealth intended to join two other cases. *Id.* The court also set a briefing schedule for two Commonwealth motions; one for joinder and one pursuant to Pa.R.E. 404(b). *See id.*

- 6 -

On February 1, 2023, the trial court noted that the Commonwealth had waived its opportunity to respond to the motion and denied Appellant's motion for reconsideration. On February 6, 2023, the trial court ordered that the above captioned docket number be tried separately from the other two cases against Appellant. On February 13, 2023, the trial court held a pretrial conference, in which it ordered that jury selection would commence on April 17, 2023, and that Appellant's trial would commence on April 20, 2023.

On April 17, 2023, Appellant filed a motion to dismiss the charges with prejudice under Pa.R.Crim.P. 600. Following a hearing that same day, the trial court denied Appellant's motion.

On April 21, 2023, after a jury trial, Appellant was convicted of theft by failure to make required disposition of funds.[3] The trial court sentenced Appellant to three to twenty-three months incarceration followed by twenty-four months of probation. Appellant timely filed a post-sentence motion, which the trial court denied on January 17, 2024. Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On July 10, 2025, this Court remanded the case to the trial court for a supplemental opinion regarding Appellant's Rule 600 issue. On September 9, 2025, the trial court filed a supplemental opinion. The case is now ripe for our review.

_____

[3] Appellant was acquitted of one count of receiving stolen property. **See** 18 Pa.C.S. § 3925(a).

- 7 -

On appeal, Appellant presents the following issues, which we have reordered as follows:

1. Whether . . . the trial erred by not dismissing this case pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure (and the Pennsylvania and United States Constitutions).

2. Whether the trial court erred by denying [Appellant's] omnibus pretrial motion as untimely when a contested bill of particulars was pending more than 30 days after arraignment, and it met other timeliness exceptions.

3. Whether the trial court erred when it denied [Appellant's] motion for mistrial when the Commonwealth introduced evidence of crimes for which she was not on trial and precluded defense counsel's explanation of reasonable doubt to the jury.

Appellant's Brief at 3 (some formatting altered).

## **Rule 600**

Appellant claims that the trial court erred by failing to dismiss the case pursuant to Rule 600. Appellant's Brief at 3, 10-14. Appellant argues that the Commonwealth did not act with due diligence because at a status conference on November 18, 2022, the Commonwealth stated that it would not be ready to proceed until January of 2023. *Id.* at 14. Appellant argues that the delay that followed the status conference was attributable to a lack of due diligence by the Commonwealth. *Id.*

Our standard and scope of review of a trial court's denial of a motion to dismiss pursuant to Rule 600 is as follows:

In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing

- 8 -

and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Leaner*, 202 A.3d 749, 765-66 (Pa. Super. 2019) (citation omitted and formatting altered).

Rule 600 provides, in relevant part, that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a); *see also Leaner*, 202 A.3d at 766 (stating that, generally under Rule 600, the Commonwealth must bring a criminal defendant to trial before the "mechanical run date," meaning within 365 days from the date upon which a written criminal complaint is filed).

The Rule further states:

For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(C)(1).

Our Supreme Court has explained that:

When considering a Rule 600 motion, the court must identify each period of delay and attribute it to the responsible party, then

adjust the 365-day tally to arrive at the latest date upon which the Commonwealth may try the defendant [("the adjusted run date")]. Absent a demonstration of due diligence, establishing that the Commonwealth has done everything reasonable within its power to guarantee that the trial begins on time, the Commonwealth's failure to bring the defendant to trial before the expiration of the Rule 600 time period constitutes grounds for dismissal of the charges with prejudice. *See* Pa.R.Crim.P. 600(D)(1).

*Commonwealth v. Barbour*, 189 A.3d 944, 947 (Pa. 2018) (some citations omitted and some formatting altered).

Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth. Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence.

*Commonwealth v. Martz*, 232 A.3d 801, 810-11 (Pa. Super. 2020) (citations omitted and formatting altered).

Further, when a defendant files a pretrial motion, the pendency of the motion does not automatically result in the exclusion of time for Rule 600.

*See Commonwealth v. Wallace*, 804 A.2d 675, 679 (Pa. Super. 2002).[4,5] Instead, the time period during which a defendant's pretrial motion is pending is only excluded where the pretrial motion causes a delay in the commencement of the trial and "the Commonwealth . . . demonstrate[s], by a preponderance of the evidence, that it exercised due diligence in opposing or responding to the pretrial motion." *See id.*

Here, since the criminal complaint was filed on November 18, 2020, the mechanical run date for Appellant's case was November 18, 2021. *See Leaner*, 202 A.3d at 766. Appellant filed her Rule 600 motion on April 17, 2023, the morning that trial was scheduled to begin, and 515 days after the mechanical run date. Following the Rule 600 hearing, the trial court denied Appellant's motion after concluding that the adjusted run date had not yet

---

[4] We note that the **Wallace** Court ruled on the defendant's motion under the statute that preceded Rule 600. **See Wallace**, 804 A.2d at 678-79 (applying Rule 1100 for a speedy trial analysis). However, this Court has continued to rely on **Wallace** when addressing Rule 600 claims. **See, e.g.**, **Commonwealth v. Andrews**, 213 A.3d 1004, 1012 n.3 (Pa. Super. 2019) (stating that this Court continues to apply cases like **Wallace** that applied the statute that preceded Rule 600 in Rule 600 cases); **Commonwealth v. Amendola**, 1309 WDA 2023, 2025 WL 48195, at *3 (Pa. Super. filed Jan. 8, 2025) (unpublished mem.).

[5] **See** Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

passed when Appellant filed her motion on April 17, 2023. **See** R.R. 99-100 (N.T., 4/17/23, at 43-44).[6]

Following our review of the record, we discern no abuse of discretion by the trial court. **See Leaner**, 202 A.3d at 765-66. The record supports the trial court's conclusion that at least 562 days were excludable, which resulted in an adjusted run date that occurred after Appellant's trial and the filing of her Rule 600 motion.

Specifically, the trial court concluded that the time period from December 22, 2020 until March 19, 2021 was excluded for Rule 600 purposes. **See** Supplemental Trial Ct. Op., 9/8/25, at 7. On December 22, 2020, Appellant sought a continuance of the preliminary hearing. **See** R.R. 60 (N.T., 4/17/23, at 4); **see also** Magisterial Docket at 1. Thereafter, Appellant sought two more continuances, which extended the preliminary hearing until March 19, 2021. **See** R.R. 60 (N.T., 4/17/23, at 4); **see also** Magisterial Docket at 1. This period accounts for eighty-seven days. Since these were defense requests for a continuance, the trial court properly excluded those eighty-seven days for Rule 600 purposes. **See** Pa.R.Crim.P. 600(c)(1); **see also**

_____

[6] We note that the notes of testimony from April 17, 2023, are not included as part of the certified record, but they are included as part of Appellant's reproduced record. The Commonwealth did not object to the accuracy of those notes of testimony. Therefore, because "their veracity is not in dispute, we rely on the copy contained within the reproduced record." **See C.L. v. M.P.**, 255 A.3d 514, 518 n.3 (Pa. Super. 2021) (*en banc*); **see also Commonwealth v. Brown**, 52 A.3d 1139, 1145 n.4 (Pa. 2012) (holding that an appellate court can consider a document that only appears in the reproduced record when "the accuracy of the reproduction has not been disputed" (citation omitted)).

*Commonwealth v. Jones*, 886 A.2d 689, 701 (Pa. Super. 2005) (approving the exclusion of a period of delay caused by a defense request for the continuance of a preliminary hearing).

The trial court found that the period from May 19, 2021 until July 6, 2021 was also excludable due to the pendency of Appellant's motion to quash. *See* Supplemental Trial Ct. Op., 9/8/25, at 9. The trial court found that the Commonwealth "had already provided Appellant with extensive discovery and exercised due diligence by promptly opposing and litigating the motion." *See id.* The record reflects that Appellant filed the motion to quash on May 19, 2021, which the trial court denied on July 6, 2021. *See* R.R. 60-61 (N.T., 4/17/23, at 4-5); *see also* Motion to Quash, 5/19/21; Trial Ct. Order, 7/6/21. While the motion to quash was pending, Appellant's trial could not commence. This period accounts for forty-eight days. Since Appellant filed the motion to quash and the Commonwealth was duly diligent in opposing the motion, the trial court did not err in excluding those forty-eight days. *See Wallace*, 804 A.2d at 679; *see also Amendola*, 2025 WL 48195, at *3.

Additionally, the trial court concluded that the time period from July 7, 2021 until September 7, 2022 was excludable for Rule 600 purposes. *See* Supplemental Trial Ct. Op., 9/8/25, at 9. The trial court notes that this period ran from the time Appellant filed her Original Omnibus[7] until the date her

---

[7] At various points in the record, both Appellant and the trial court state that Appellant's Original Omnibus was filed on July 7, 2021. *See, e.g.*,
*(Footnote Continued Next Page)*

Supplemental Omnibus was decided. *See id.* The trial court concluded that the Commonwealth was duly diligent in opposing and litigating the motions. *See id.* A review of the record shows that Appellant filed her Original Omnibus on July 3, 2021, while her motion to quash was still pending. *See* R.R. 62 (N.T., 4/17/23, at 6); *see also* Original Omnibus, 7/3/21.[8] As noted above, the trial court denied Appellant's motion to quash on July 6, 2021. *See* Trial Ct. Order, 7/6/21. However, Appellant's Original Omnibus remained pending at that time.

The trial court scheduled a hearing on Appellant's Original Omnibus for September 15, 2021. During the time between the filing of the motion and the hearing, the Commonwealth obtained an additional search warrant in order to cure one of the suppression issues raised in Appellant's Original

---

Supplemental Trial Ct. Op., 9/8/25, at 9; N.T. Mot. Hr'g, 10/12/21, at 6. However, the docket reflects that Appellant filed the Original Omnibus on July 3, 2021. *See* Criminal Docket at 7 (reflecting counsel filed the Original Omnibus on July 3, 2021).

[8] Appellant's Original Omnibus contained six issues. *See* Original Omnibus, 7/3/21, at 1-12. Specifically, Appellant argued that the search warrant used to obtain Appellant's bank records did not contain facts that she was engaged in criminal activity or that evidence of a crime would likely be found and that the search warrant was overly broad. *See id.* at 2-7. Additionally, Appellant argued that the search warrant was executed a second time, after the warrant was no longer valid, along with a cover letter seeking items not authorized by the warrant. *See id.* at 7-8. Appellant also argued that the Commonwealth obtained additional banking information without a warrant and that the Commonwealth obtained evidence from several companies by *subpoena duces tecum* without a warrant. *See id.* at 9-11. Finally, Appellant argued that any evidence obtained based on the alleged illegality of the other claims should be suppressed as fruit of the poison tree. *See id.* at 12.

Omnibus. *See* R.R. 83 (N.T., 4/17/23, at 27). Specifically, the Commonwealth sought and executed the additional search warrant to obtain the bank records that were previously obtained without a valid warrant when a police officer executed the initial search warrant a second time with a cover letter requesting additional materials that were not authorized by the initial warrant. *See id.* The evidence obtained through the new warrant had already been turned over to Appellant. *See id.*

On the day of the hearing on Appellant's Original Omnibus, Appellant requested a continuance in order to file her Supplemental Omnibus. *See* R.R. 62 (N.T., 4/17/23, at 6); *see also* Mot. for Continuance, 9/15/21. The motions hearing was rescheduled for October 12, 2021. *See* R.R. 63 (N.T., 4/17/23, at 7). On October 6, 2021, Appellant filed her Supplemental Omnibus. *See id.*; *see also* Supplemental Omnibus Pretrial Mot., 10/6/21. At the October 12th hearing, the Honorable Amber A. Kraft denied Appellant's Original Omnibus as untimely and later recused herself from the case after recognizing that individuals involved in the case were personal friends or acquaintances. *See* R.R. 63 (N.T., 4/17/23, at 7); *see also* Clerk's Minutes, 10/12/21; N.T. Suppression Hr'g, 10/12/21, at 12, 69-72. Appellant's Supplemental Omnibus, therefore, remained pending at the conclusion of the October 12th hearing. The case was then assigned to the Honorable Craig T. Trebilock, who recused himself on November 16, 2021 after a witness in the case was elected to the bench of the York County Court of Common Pleas. *See* R.R. 63 (N.T., 4/17/23, at 7); *see also* Trial Ct. Order, 11/16/21. On

- 15 -

November 18, 2021, the Honorable Maria Musti Cook, President Judge of the York County Court of Common Pleas, recused all of the judges of the York County Court of Common Pleas for the same reason. **See** R.R. 64 (N.T., 4/17/23, at 8); Trial Ct. Order, 11/18/21. The Honorable John D. Kuhn was later assigned to the case as a senior judge specially presiding. **See** R.R. 64 (N.T., 4/17/23, at 8); **see also** Supplemental Trial Ct. Op., 9/8/25, at 3, 9.

On January 10, 2022, after Judge Kuhn's assignment to the case, the Commonwealth filed a motion to schedule a status hearing. **See** R.R. 65 (N.T., 4/17/23, at 9); **see also** Mot. for Status Hr'g, 1/10/22. The status hearing was held on April 27, 2022, at which point the trial court scheduled a hearing on Appellant's Supplemental Omnibus for July 8, 2022. **See** R.R. 65-66 (N.T., 4/17/23, at 9-10); **see also** Trial Ct. Order, 4/27/22. The hearing was partially held on July 8, 2022, but was bifurcated to August 8, 2022. **See** R.R. 66 (N.T., 4/17/23, at 10). At the conclusion of the August 8th hearing, the trial court deferred ruling on the Supplemental Omnibus and scheduled a status hearing for September 26, 2022.[9] **See id.**; **see also** N.T. Suppression Hr'g, 8/8/22, at 179-82. The trial court denied Appellant's Supplemental Omnibus on September 7, 2022. **See** R.R. 67 (N.T., 4/17/23, at 11); **see also** Trial Ct. Order, 9/7/22. Accordingly, from July 7, 2021 until September 7, 2022, a period of 427 days, Appellant's Original Omnibus or Supplemental

---

[9] We note that the trial court order from August 8, 2022 explicitly attributed all Rule 600 time until the September 26th hearing to Appellant. **See** Trial Ct. Order, 8/8/22.

Omnibus were pending before the trial court, and Appellant's trial could not commence. The trial court found that the Commonwealth acted with due diligence in opposing the motions and that conclusion is supported by the record. Therefore, we conclude that the trial court properly excluded the 427 days when Appellant's omnibus motions were pending. *See Wallace*, 804 A.2d at 679; *see also Amendola*, 2025 WL 48195, at \*3.

Based upon these three time periods alone, we are able to conclude that the trial court did not abuse its discretion in denying Appellant's Rule 600 motion.[10] As stated above, Appellant's mechanical run date was November 18, 2021. After excluding 562 days,[11] Appellant's adjusted run date is June

_____

[10] Because we are able to conclude that the trial court did not abuse its discretion in denying Appellant's Rule 600 motion based on these periods alone, we do not address the trial court's conclusions regarding other time periods. Accordingly, we need not consider the time period that Appellant specifically challenges in her appellate brief, which began in January 2023 and ran until the filing of the Rule 600 motion in April of 2023. *See* Appellant's Brief at 14. Further, because our analysis only relies on periods of delay that were not caused by the Commonwealth, we do not consider Appellant's argument that the trial court relieved "the Commonwealth of its obligation to act with due diligence throughout the life of the case before excusing judicial delay as justification for denying [Appellant's] motion." *See* Appellant's Brief at 11 (citing *Commonwealth v. Harth*, 252 A.3d 600, 618 (Pa. 2021)); *see also Commonwealth v. Lear*, 325 A.3d 552, 562 (Pa. 2024) (stating that *Harth* "was about judicial delay in conjunction with other periods of delay **caused by the Commonwealth**. Delay actually occasioned by the Commonwealth was essential to the *Harth* majority's analysis, because without it, the second sentence of Rule 600(C)(1)[, which excludes any other periods of delay not caused by the Commonwealth,] would have controlled rather than the first" (emphasis in original)).

[11] In sum, the 562 days includes the 87-day period where Appellant requested continuance of the preliminary hearing, the 48-day period where the
*(Footnote Continued Next Page)*

3, 2023. Since Appellant's Rule 600 motion was filed on April 17, 2023, we conclude that the trial court did not err in denying Appellant's motion. ***See Leaner***, 202 A.3d at 765-66. Accordingly, no relief is due.

### Denial of Original Omnibus

Appellant next claims that "[t]he trial court erred [by denying her] omnibus pretrial motion [to suppress] as untimely when a contested bill of particulars was pending more than 30 days after arraignment, and it met other timeliness exceptions." Appellant's Brief at 5-6. Appellant claims that the trial court should have extended the time for filing for good cause shown because "[c]ontemplated within the concept of cause shown is a finding . . . that discovery has not been completed, or a bill of particulars has not been furnished, or that contested motions for discovery or for a bill of particulars are pending." ***See*** Appellant's Brief at 6-10 (citing Pa.R.Crim.P. 579, cmt.). Appellant asserts that the interests of justice required the trial court to excuse the untimeliness of the motion because the merits were apparent and that "the length and cause of the delay was caused by the Commonwealth's failure to provide complete discovery or furnish a bill of particulars." ***See id.*** at 9-10.

---

Appellant's motion to quash was pending, and the 427-day period where the Appellant's omnibus pretrial motions were pending.

We review the trial court's determination that a suppression motion was untimely for an abuse of discretion. ***Commonwealth v. Micklos***, 672 A.2d 796, 803 (Pa. Super. 1996) (*en banc*).

> A mere error of judgment does not constitute an abuse of discretion. Rather, a trial court abuses its discretion if in reaching a conclusion[,] the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will as shown by the evidence or the record[.]

***Id.*** at 803 (citations omitted and formatting altered).

> Under Pennsylvania Rule of Criminal Procedure 578, unless otherwise required in the interests of justice, all pretrial requests, including a request for suppression of evidence, must be included in one omnibus pretrial motion. ***See*** Pa.R.Crim.P. 578, [cmt.]. Rule 579 states that an omnibus pre-trial motion must be filed within 30 days of arraignment. The only exceptions to this rule are: (1) the opportunity to do so did not exist, (2) the defendant or defense counsel was unaware of the grounds for the motion, or (3) the time for filing was extended by the court for good cause shown. ***See*** Pa.R.Crim.P. 579(A).

***Commonwealth v. Borovichka***, 18 A.3d 1242, 1248 (Pa. Super. 2011).

> Under [Pennsylvania Rule of Criminal Procedure] 581(B), if the defendant files an untimely suppression motion, "the issue of suppression of such evidence shall be deemed to be waived" unless the opportunity to raise such issue did not previously exist or the court excuses the defendant's tardiness in the interests of justice. The "interests of justice" test requires consideration of "the length and cause of the delay, the merits of the suppression claim, and the court's ability, considering the complexity of the issues and the availability of the witnesses, to hold the hearing promptly." ***Commonwealth v. Brown***, 378 A.2d 1262, 1266 (Pa. Super. 1977). The trial court should invoke the interests of justice exception when the merits of counsel's untimely motion are so apparent that justice requires that it be heard. Courts are unwilling to apply the "interests of justice" exception in the

- 19 -

defendant's favor when he raises an untimely suppression issue whose merits are not apparent.

*Commonwealth v. Warren*, 476 MDA 2019, 2020 WL 119594, at *5 (Pa. Super. filed Jan. 10, 2020) (unpublished mem.) (some citations omitted and some formatting altered).  Ultimately, "courts are reluctant to excuse untimely motions arguing issues that the defendant could have timely raised by the original due date."  *Commonwealth v. Westlake*, 295 A.3d 1281, 1287 (Pa. Super. 2023) (citation omitted and some formatting altered).

Here, after reviewing the record, we conclude that the trial court did not abuse its discretion in denying Appellant's Original Omnibus as untimely because Appellant could have raised the issues in that motion by the original due date and the interest of justice did not otherwise excuse the untimely filing.  *See Micklos*, 672 A.2d at 802; *Westlake*, 295 A.3d at 1287; *see also Warren*, 2020 WL 119594, at *5.

Further, to the extent Appellant argues that the Commonwealth's failure to furnish a bill of particulars caused the delay in filing her Original Omnibus, that claim is belied by the record.

The record reflects that Appellant filed a request for a bill of particulars on April 16, 2021.  *See* Request for Bill of Particulars, 4/16/21.  The Commonwealth responded on April 22, 2021, stating that Appellant's request for a bill of particulars was an improper substitute for discovery and asserting that it had already filed a criminal information, a criminal complaint along with an affidavit of probable cause, and that it "ha[d] provided a significant amount

of discovery to [Appellant.]" ***See*** Commonwealth Response to Request for Bill of Particulars, 4/22/21. Appellant then filed an application for a bill of particulars and a motion to quash based on the Commonwealth's failure to furnish the items she requested. ***See*** Application for Bill of Particulars, 4/29/21; Mot. to Quash, 5/19/21.

On July 3, 2021, while Appellant's motion to quash was still pending, Appellant filed her Original Omnibus.[12,13] ***See*** Original Omnibus, 7/3/21. Appellant's motion did not include a request for an extension to file or otherwise mention the untimeliness of the motion. ***See id.***

On July 6, 2021, the trial court denied Appellant's motion to quash. ***See*** Trial Ct. Order, 7/6/21. In that order, the trial court concluded that the informations filed by the Commonwealth properly apprised Appellant of the charges against her and provided adequate information to allow her to raise

_____

[12] On March 31, 2021, Appellant filed a waiver of arraignment, which was scheduled for April 13, 2021. ***See*** Waiver of Arraignment, 3/31/21. Accordingly, Appellant's July 3rd Original Omnibus was filed more than thirty days after arraignment.

[13] At the October 12th suppression hearing Appellant argued that the Original Omnibus was filed on July 7, 2021, the day after the trial court denied the motion to quash. ***See*** N.T. Mot. Hr'g, 10/12/21, at 6. However, as stated above, the docket reflects that Appellant filed the Original Omnibus on July 3, 2021. ***See*** Criminal Docket at 7 (reflecting counsel filed the Original Omnibus on July 3, 2021). Appellant seems to concede the fact that the Original Omnibus was filed prior to the court's ruling on her motion to quash in her appellate brief. ***See*** Appellant's Brief at 10 (stating that the Original Omnibus "was filed four days prior to the trial court's order denying relief [on the motion to quash]").

double jeopardy and statute of limitations defenses, that the affidavits of probable cause were several pages in length, that the Commonwealth had already turned over voluminous discovery to Appellant, and that Appellant did not disagree that discovery had been passed. *See id.* at 4-5.

At the October 12, 2021 hearing on the Original Omnibus, Appellant argued that the time period to file her motion should have been extended for good cause shown because "the request for bill of particulars was outstanding, and the comment to Rule 581 clearly states that any time there is a pending or contested request for bill of particulars . . . that the [trial c]ourt can extend the time to file an omnibus pre-trial motion." *See* N.T. Mot. Hr'g, 10/12/21, at 6. The trial court denied Appellant's Original Omnibus as untimely and concluded that the motion had "no merit on its face because the [Commonwealth's] subsequent search warrant corrected the issue with respect to inevitable discovery." *Id.* at 12.

At the hearing, Appellant did not allege that the Commonwealth's failure to furnish a bill of particulars prevented her from having the opportunity to raise the issues in her Original Omnibus or that it prevented her from being aware of the grounds for her claims therein. *See id.* at 5-8 (reflecting that counsel argued that he discovered the issue raised in Appellant's *supplemental* omnibus pretrial motion when supplemental discovery was turned over in September of 2021). Similarly, in her appellate brief, Appellant has not identified how the Commonwealth's failure to supply a bill of particulars

prevented her from raising the issues in her Original Omnibus. ***See*** Appellant's Brief at 5-10.

Further, the Commonwealth's delay in supplying Appellant with a bill of particulars could not have prevented Appellant from timely filing her Original Omnibus because Appellant filed her Original Omnibus *before* the trial court ruled on her motion to quash, wherein she argued for dismissal based on the Commonwealth's failure to furnish the requested bill of particulars. Accordingly, the record reflects that the Commonwealth did not cause Appellant's delay in filing her Original Omnibus and that Appellant could have timely raised the issues in the motion by the original due date. ***See Westlake***, 295 A.3d at 1287; ***see also Warren***, 2020 WL 119594, at *5.

As to the apparent merits of the Original Omnibus, Appellant fails to explain how the merits of the motion were apparent given the Commonwealth's inevitable discovery argument. ***See*** Appellant's Brief at 9, 10; ***see also*** N.T. Mot. Hr'g, 10/12/21, at 5-8; Response in Support, 10/12/21.[14] Instead, Appellant baldly asserts that "inevitable discovery could

_____

[14] Appellant's filing entitled "Response in Support of Denying Commonwealth's Objections to Defendant's Omnibus Pretrial Motion and Supplemental Omnibus Pretrial Motion" is missing page five in the certified record on appeal and is not included in Appellant's reproduced record. ***See*** Response in Support, 10/12/21. Appellant does not reference this filing in her appellate brief argument on this issue. ***See*** Appellant's Brief at 5-10. However, to the extent Appellant wished to rely on information contained in that missing page, we find that argument waived. ***See Commonwealth v. Whitaker***, 878 A.2d 914, 922 (Pa. Super. 2005) (stating "[i]t is Appellant's responsibility to ensure that this Court is provided a complete certified record to ensure proper appellate review; a failure to ensure a complete certified record may render the issue waived" (citation omitted)).

not have cured all the issues raised in the motion, as [Appellant] challenged the search and seizure of financial records on overbreadth and obtaining additional information and evidence in violation of the warrant requirement." **See id.** at 9. Further, Appellant claims that the motion "alleged sufficient facts specific to this case that rendered apparent the merits of the motion." **See id.** at 10.

However, Appellant does not identify any evidence that was obtained pursuant to the allegedly invalid initial search warrant that was not authorized and obtained pursuant to second warrant, nor does she argue that the invalidity of the initial search warrant affected the validity of the second search warrant. For these reasons, we conclude that the trial court did not abuse its discretion in declining to excuse the tardiness of Appellant's motion in the interest of justice as the merits of Appellant's Original Omnibus are not apparent. **See Micklos**, 672 A.2d at 802; **Warren**, 2020 WL 119594, at *5.

Accordingly, because the record reflects that Appellant could have raised the issues in her Original Omnibus in a timely omnibus motion and that the merits of her motion were not so facially apparent that the trial court was required to excuse the untimeliness of the motion in the interests of justice, we are constrained to conclude that the trial court did not abuse its discretion in denying Appellant's Original Omnibus as untimely. **See Micklos**, 672 A.2d at 802; **Westlake**, 295 A.3d at 1287; **see also Warren**, 2020 WL 119594, at *5.

**Denial of Motions for Mistrial**

In her remaining claims, Appellant argues that the trial court erred in denying her motions for a mistrial. *See* Appellant's Brief at 3, 15-18.

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013). A mistrial is appropriate "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Id.* (citation and internal quotation marks omitted).

Rule 404(B) Issue

First, Appellant claims that the trial court erred by denying her motion for a mistrial "when the Commonwealth introduced evidence of crimes for which she was not on trial." Appellant's Brief at 15. Specifically, Appellant argues that the trial court should have granted a mistrial "when a Commonwealth witness violated the trial court's ruling prohibiting use of the phrase or reference to 'bad checks.'" *See id.* at 16.

As this Court has previously stated:

> Not all references which may indicate prior criminal activity require reversal. Mere passing references to criminal activity will not require reversal unless the record indicates that prejudice resulted from the reference. The nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required.

*Commonwealth v. Guilford*, 861 A.2d 365, 370 (Pa. Super. 2004) (citations

omitted).

The trial court addressed Appellant's claim as follows:

During a status conference held November 18, 2022, the Commonwealth made known its intention to try the instant matter separate and apart from [the cases at Docket Nos. 1217-2021 and 1219-2021]. On January 10, 2023, the Commonwealth filed [a Rule 404(b) motion in the cases at Docket Nos. 1217-2021 and 1219-2021] seeking permission to introduce at trial specific evidence of Appellant's past conduct and criminal convictions. That motion was discussed extensively during a status conference held February 13, 2023. At no time did the Commonwealth indicate its intent to present prior bad conduct evidence in the instant matter. By order and memorandum opinion dated February 20, 2023, the court granted in part and denied in part the Commonwealth's motion in the other cases.

On the morning of April 20, 2023, (the first day of trial) Appellant presented a motion in limine [seeking to exclude prior bad acts evidence]. She essentially asked the court to preclude evidence of any uncharged criminal conduct that was not contained in the criminal information. The Commonwealth indicated that it had no intent to offer evidence within the scope of Appellant's concerns, except to show that during the course of conduct of the underlying case, Appellant had given a check to the York Revolution which had bounced. The Commonwealth argued that this was necessary to help show the course of Appellant's conduct, her intent and motive, and that she dealt with Motor Fund assets as her own property. Because this evidence was disclosed in discovery, prior notice under Rule 404 was not required. *See Commonwealth v. Lynch*, 57 A.3d 120 (Pa. Super. 2012).

The court denied Appellant's motion but directed that the prosecution and Detective Fetrow not use the term "bad check." Instead, reference to what Appellant's and [the] Motor Fund['s] bank records revealed would be permitted.

The first witness called by the Commonwealth was Brandon Tesluk, Director of Group and Hospitality Sales for the York Revolution. After discussing the concept of Bike Night and some interactions with Appellant, the witness was asked about the 2019

event. He referenced tickets that Appellant had requested and for which she owed $972.

Then, the following exchange occurred:

> [Question:] Okay. After the event occurs, tell me the process of figuring out that, you know, the Revs never got any of the sponsorship money or the ticket money and working into the end of the season and looking forward.
>
> [Answer:] . . . For the picnic tickets that went unpaid, we were handed a check for that and that did bounce.

Defense counsel objected and requested a mistrial. Arguments were exchanged and the request was denied. **The court determined that the reference to a bounced check was not the same as a reference to a bad check absent other information, that the response was unsolicited, and that the court's prior instruction was limited to Detective Fetrow**. The court offered to give a curative instruction, but defense counsel declined.

Appellant has not identified any other incident of prejudicial prior bad conduct being offered into evidence.

Trial Ct. Op., 3/1/24, at 8-9 (footnotes omitted, some formatting altered, and emphasis added).

Following our review of the record, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for a mistrial. *See Bryant*, 67 A.3d at 728. Initially, we must note that it does not appear that the Commonwealth's witness violated the trial court's ruling regarding references to "bad checks." The record reflects that Appellant filed a motion in limine seeking to exclude "allegations related to bad checks" at trial. *See*

Mot. in Limine, 4/20/23, at 3. The trial court denied Appellant's motion[15] but specified that "the Commonwealth can't use the phrase or reference 'bad checks' during trial." **See** R.R. 175 (Trial Ct. Order, 4/20/23).[16] The challenged testimony did not reference "bad checks" but rather a "check . . . that did bounce." **See** R.R. 179 (N.T., 4/20-21/23, at 20). As the trial court recognized during the sidebar regarding the testimony, "[t]he specific instructions [per the trial court's order] was that the Commonwealth is not to mention the term, bad check, because that has a specific meaning within the crimes code." **See** R.R. 183 (N.T., 4/20-21/23, at 24). We agree with the trial court that a reference to a "bounced check" is not the same as a reference

_____

[15] While Appellant references Rule 404(b) and its caselaw in the argument section of her brief, **see** Appellant's Brief at 15-16, Appellant failed to include a challenge to the trial court's ruling on her Rule 404(b) motion in her Rule 1925(b) statement or the statement of questions section of her brief. **See** Appellant's Brief at 3; Rule 1925(b) Statement, 2/26/24, at 1-2. Accordingly, to the extent that Appellant wished to challenge the trial court's denial of her Rule 404(b) motion, we find that issue waived. **See** Pa.R.A.P. 1925(b)(4)(vii)(providing that issues not included in a Rule 1925(b) statement are waived on appeal); Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"); **see also Commonwealth v. Lamont**, 308 A.3d 304, 316 n.12 (Pa. Super. 2024) (finding waiver of issues that did not appear in a Rule 1925(b) statement or statement of questions section of an appellate brief).

[16] The trial court's order denying Appellant's Rule 404(b) motion is not part of the certified record on appeal. However, it appears in Appellant's reproduced record and, since the Commonwealth has not objected to its veracity, its "veracity is not in dispute [and] we [may] rely on the copy contained within the reproduced record." **See C.L.**, 255 A.3d at 518 n.3; **see also Brown**, 52 A.3d at 1145 n.4.

to a "bad check." A reference to a "bad check" implies that a crime has been committed. *See* 18 Pa.C.S. § 4105 (defining the criminal offense of "Bad Checks"). However, a reference to a bounced check does not necessarily suggest criminal conduct.

Further, the reference was not intentionally elicited by the Commonwealth. *See Guilford*, 861 A.2d at 370. The Commonwealth asked the witness how he figured out that "the Revs never got any of the sponsorship money or the ticket money." *See* R.R. 179 (N.T., 4/20-21/23, at 20). The witness responded that the missing sponsorship money was discovered due to outstanding unpaid invoices but that the tickets were discovered when a check bounced. *See id.* Accordingly, the Commonwealth did not specifically ask whether Appellant provided a check that bounced. Instead, the witness volunteered that he discovered the missing ticket money once the check bounced.

The record also reflects that the reference to the bounced check was merely a passing reference. *See Guilford*, 861 A.2d at 370. Appellant only directs us to the single reference to a bounced check. *See* Appellant's Brief at 16-17. At the conclusion of the sidebar regarding the comment, the trial court directed the Commonwealth to instruct the witness to avoid any reference to "bad checks or anything like that." *See* R.R. 183 (N.T., 4/20-21/23, at 24). The prosecutor confirmed that she instructed the witness as such. *See* R.R. 184 (N.T., 4/20-21/23, at 25). Appellant does not direct us to any other reference to bounced or bad checks.

Finally, Appellant has failed to show that she was prejudiced by the reference to the bounced check. Appellant merely argues that "a juror receiving the evidence of the bounced checks could reasonably infer that [Appellant] engaged in prior criminal activity regarding [the $972] check that bounced and had not been satisfied." Appellant's Brief at 17. However, as stated above, a reference to a "bounced check" does not inherently suggest criminal conduct the way a reference to a "bad check" would. Further, as the trial court correctly noted, the witness's reference to the bounced check was vague enough that the provider of the bounced check was not immediately apparent. **See** R.R. 179 (N.T., 4/20-21/23, at 20) (stating "we were handed a check for [the $972 worth of tickets] and [the check] did bounce" without clarifying who provided the check); **see also** R.R. 182 (N.T., 4/20-21/23, at 23) (trial court recognizing that "there is no testimony that the check came from [Appellant]").

Accordingly, based upon the above, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for a mistrial on this basis. **See Bryant**, 67 A.3d at 728; **see also Guilford**, 861 A.2d at 370.

<u>Reasonable Doubt Issue</u>

Appellant also claims that the trial court erred by failing to grant a mistrial due to prosecutorial misconduct. Appellant's Brief at 17-18. Specifically, Appellant argues that "[t]he prosecution engaged in misconduct by objecting to the defense counsel's closing argument and its comments in the presence of the jury." **Id.** at 17. Appellant argues that the objection

interrupted defense counsel's closing during counsel's explanation of reasonable doubt, caused "protracted delay," and resulted in the trial court "preclude[ing] defense counsel from explaining the standard of proof in a manner favorable to [Appellant]." *Id.* Appellant claims that the objection caused prejudice because it spanned more than thirteen minutes and occurred in the presence of the jury.[17] *See id.* at 18.

> In considering a claim of prosecutorial misconduct, our inquiry is centered on whether the defendant was deprived of a fair trial, not deprived of a perfect one. Thus, a prosecutor's remarks do not constitute reversible error unless their unavoidable effect was to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.

*Commonwealth v. Bozic*, 997 A.2d 1211, 1229 (Pa. Super. 2010) (some formatting altered and citation omitted). Further, "[a]ny challenge to a prosecutor's comment must be evaluated in the context in which the comment was made." *Commonwealth v. Reid*, 259 A.3d 395, 429 (Pa. 2021)

Here, the trial court addressed Appellant's claim as follows:

During closing argument, defense counsel was discussing the concept of reasonable doubt as follows:

> Now I've always understood that reasonable doubt is the type of doubt that would make an ordinarily prudent person to cause or hesitate when they make a decision of great importance in their own affairs, like buying a home, or, for

---

[17] We note that, contrary to Appellant's assertion, argument regarding the objection occurred at sidebar. *See* R.R. 194-200 (N.T., 4/20-21/23, at 24-47).

instance, deciding as a parent whether to allow a doctor to perform a lifesaving procedure on your child.

Now imagine that a team of doctors has just encountered you in the waiting room of the hospital, and they approach you and they say, Mr. and Mrs.[—]

[*See* R.R. 194 (N.T., 4/17/23, at 241)].

The prosecuting attorney objected that the argument violated *Commonwealth v. Drummond*, 285 A.3d 625 (Pa. 2022), decided five months earlier. A sidebar discussion followed. Drummond involved the question whether defendant's counsel was ineffective for failing to object to a court's charge on the concept of beyond a reasonable doubt. At issue was whether the trial judge's effort to explain the concept by use of a personal or emotional illustration or analogy had the effect of diminishing the prosecution's burden of proof to the detriment of the accused.

The illustration initiated by defense counsel in the instant matter sounded remarkably similar to the one condemned by the Supreme Court. The fact that the instant remarks were being offered by defense counsel instead of the judge is of no consequence. Certainly, juries are instructed to follow the law as given by the court. Nevertheless, objection to counsel's misstatement of the law during closing arguments is not prohibited. Here, counsel's argument was a misstatement of the law, and it was challenged by the prosecution. Correction of that error at the time does not entitle Appellant to relief.

Trial Ct. Op., 3/1/24, at 9-10 (footnotes omitted and some formatting changed).

Following our review of the record, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for a mistrial because the prosecutor's objection was valid and, therefore, could not have deprived Appellant of a fair trial. *See Bryant*, 67 A.3d at 728. In *Drummond*, our Supreme Court addressed a claim of ineffective assistance of counsel based upon trial counsel's failure to object to a jury instruction. *See Drummond*,

285 A.3d at 634-35. The jury instruction in question asked the **Drummond** jurors to imagine that a loved one, or "precious one," had a life threating illness and required surgery. **See id.** at 636. The jury instruction then explained that proof beyond a reasonable doubt was akin to the certainty one would have before moving forward with such a surgery. **See id.** at 636-37. In rejecting the jury instruction, our Supreme Court explained that

> the average person [does] not require proof beyond a reasonable doubt before making important decisions in his or her life, but often people press forward even though they harbor serious doubt and uncertainty, particularly when . . . assisting in the health decisions of loved ones. These day-to-day decision-making processes are not comparable, let alone equivalent, to finding proof of a crime beyond a reasonable doubt.

**Id.** at 640-41.

Despite the fact that the trial court gave some proper jury instructions regarding reasonable doubt, our Supreme Court stated that "when the misstatement confuses and distorts the most fundamental principle in our criminal law and . . . instructs jurors to perform their otherwise objective task by likening it to an impassioned, last-ditch plea to save a loved one . . . comparing the valid portions of the instruction against the invalid ones does not suffice to neutralize the prejudicial effect of the error." **Id.** at 643. Ultimately, the **Drummond** Court concluded that based on the trial court's errant instruction, "it was not merely reasonably likely that the jury used an unconstitutional standard; it was almost a certainty." **Id.** at 645.

Here, we agree with the trial court's conclusion that the prosecution's objection was proper as defense counsel, in attempting to provide his reasonable doubt explanation, was replacing the Commonwealth's reasonable doubt standard with a much lower and unconstitutional standard. ***See id.*** at 640-41, 645. In his explanation of reasonable doubt, defense counsel was clearly attempting to analogize the reasonable doubt standard to the type of doubt an individual would need to overcome to decide on medical care for a loved one. ***See*** R.R. 194 (N.T., 4/17/23, at 241). This is, of course, the exact type of analogy our Supreme Court warned against in ***Drummond***. ***See*** 285 A.3d at 643-45. Further, we agree with the trial court that it is of no moment that the ***Drummond*** court was addressing jury instructions rather than closing arguments of counsel. ***See Commonwealth v. Jones***, 683 A.2d 1181, 1202 (Pa. 1996) (stating "it is improper for counsel to misstate the law or to state it in such a manner so as to confuse the jury" (citation omitted)). Because the prosecution's objection was valid, it could not have had the "unavoidable effect [of] prejudice[ing] the jury [against the Appellant] so that they could not weigh the evidence objectively and render a true verdict." ***See Bozic***, 997 A.2d at 1229; ***see also Bryant***, 67 A.3d at 728. Therefore, the trial court did not abuse its discretion in denying Appellant's motion for a mistrial.[18] ***See Bryant***, 67 A.3d at 728.

---

[18] Additionally, we do not find availing Appellant's argument that the duration of the sidebar argument alone caused her prejudice. Appellant fails to cite,
*(Footnote Continued Next Page)*

For these reasons, we conclude that Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed.  Jurisdiction relinquished.[19]

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/4/2026

_____

and this Court is unaware of, a case that suggests the duration of a sidebar argument alone is sufficient to cause a defendant prejudice.  Further, as stated above, the prosecution's objection was valid.  Accordingly, we decline to find prejudice where the prosecution makes a valid objection and the sidebar argument on that objection is merely protracted, as the delay in such instance alone could not have deprived Appellant of a fair trial.  **See Bozic**, 997 A.2d at 1229.

[19] Further, Appellant's November 17, 2025 application for leave to file a post-submission communication pursuant to Pa.R.A.P. 2501(a) is hereby **DENIED**.